In the

# United States Court of Appeals

For The Fourth Circuit

**Record No. 26-1648 (L)**

EDWARD JEWETT, BRENDA HAMILTON, and
KELLY FLANNAGAN

*Appellants,*

– v. –

COURTHOUSE NEWS SERVICE, *et al*.

*Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA AT ABINGDON**

# OPENING BRIEF OF APPELLANTS EDWARD JEWETT, BRENDA HAMILTON, AND KELLY FLANNAGAN

William D. Prince, IV (VSB No. 77209)
John P. O'Herron (VSB No. 79357)
Peter S. Askin (VSB No. 93371)
*THOMPSON*MCMULLAN, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
(804) 698-6253 (Telephone)
joherron@t-mlaw.com
wprince@t-mlaw.com
paskin@t-mlaw.com
*Counsel for Appellants Jewett, Hamilton and Flanagan*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........ v

INTRODUCTION ........ 1

STATEMENT OF JURISDICTION ........ 3

ISSUES PRESENTED FOR REVIEW ........ 3

STATEMENT OF THE CASE ........ 4

1. VIRGINIA'S STATUTORY SCHEME FOR ONLINE REMOTE ACCESS TO CIVIL COURT RECORDS. ........ 4

2. THE OCRA-OBTAINED COURT RECORDS AT ISSUE ARE AVAILABLE AT THE COURTHOUSE TO PLAINTIFFS AND THE PUBLIC. ........ 6

3. PLAINTIFFS' PREVIOUS CHALLENGE TO THE DISSEMINATION RESTRICTION. ........ 7

4. PLAINTIFFS' CLAIM THAT THE DISSEMINATION RESTRICTION IS A PRIOR RESTRAINT. ........ 9

5. THE DISTRICT COURT'S RULINGS. ........ 10

ARGUMENT ........ 11

1. PRIOR RESTRAINTS ARE DISTINCT FROM SUBSEQUENT PUNISHMENTS. ........ 13

1.1. If a regulation is a prior restraint, courts apply one of the strictest forms of scrutiny. ........ 13

1.2. Courts strictly police the line between a prior restraint and other speech regulations. ........ 15

1.3. A classic prior restraint is a licensing scheme that requires pre-approval to speak. .................................. 16

1.4. Courts have extended the prior restraint definition to certain "gag" orders. .................................................. 17

1.5. Other orders regulating speech are not prior restraints. ................................................................ 18

1.6. Statutes that prohibit speech are not prior restraints. ................................................................ 19

2. THE DISSEMINATION RESTRICTION IS NOT A PRIOR RESTRAINT. ........................................................................ 21

2.1. The Dissemination Restriction is not a gag order, nor does it provide for injunctive relief. ............................ 22

2.2. The Dissemination Restriction is not a licensing of speech, which Plaintiffs do not plead. ......................... 25

2.3. The district court misrelied on *Soderberg* and the dissent in *Courthouse News*. ....................................... 27

3. THE DISTRICT COURT ERRED BY FINDING THAT THE PLAINTIFFS HAD STANDING TO CHALLENGE THE DISSEMINATION RESTRICTION. .................................................................... 29

3.1. Plaintiffs lack an injury in fact because they already have access to the "same records" on which they base their asserted "right to listen." .................................. 30

3.2. Plaintiffs have disavowed claiming any rights derivative of Mr. Lacy's as required by the willing speaker doctrine. ........................................................ 33

4. THE CLERKS ENJOY ELEVENTH AMENDMENT IMMUNITY, AND THE *EX PARTE YOUNG* EXCEPTION DOES NOT APPLY. ............. 36

4.1. The Eleventh Amendment is an immunity from suit. .......... 37

4.2. The *Ex Parte Young* exception only applies to state officials who threaten enforcement of an unconstitutional act. .......... 38

4.3. The Complaint fails to allege that the Clerks have threatened to revoke OCRA access. .......... 39

CONCLUSION .......... 41

CERTIFICATE OF COMPLIANCE .......... 42

CERTIFICATE OF FILING AND SERVICE .......... 43

## **TABLE OF AUTHORITIES**

### **CASES**

*360 Virtual Drone Servs. LLC v. Ritter*,
102 F.4th 263 (4th Cir. 2024) .......................................................... 13

*Alabama v. Garrett*,
531 U.S. 356 (2001) ....................................................................... 37

*Alexander v. United States*,
509 U.S. 544 (1993) ............................................................... *passim*

*Antrican v. Odom,*
290 F.3d 178 (4th Cir. 2002) ........................................................... 38

*Bishop v. Bartlett*,
575 F.3d 419 (4th Cir. 2009) ........................................................... 31

*Brammer-Hoelter v. Twin Peaks Charter Acad.*,
602 F.3d 1175 (10th Cir. 2010) ........................................................ 31

*Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cty.*,
854 F. App'x 521 (4th Cir. 2021) ............................................... 17, 23

*City of Lakewood v. Plain Dealer Publ'g. Co.,*
486 U.S. 750 (1988) ....................................................................... 16

*Cooksey v. Futrell*,
721 F.3d 226 (4th Cir. 2013) ........................................................... 31

*Courthouse News Serv. v. Hade*,
631 F. Supp. 3d 349 (2022) ............................................................... 8

*Courthouse News Serv. v. Smith*,
126 F. 4th 899 (4th Cir. 2025) ................................................ *passim*

*Cox Broadcasting Corp. v. Cohn*,
420 U.S. 469 (1975) .......................................................... 27

*Dow Jones & Co. v. Simon,*
842 F.2d 603 (2d Cir. 1988)............................................................ 34

*Edelman v. Jordan*,
415 U.S. 651 (1974) .......................................................... 37

*Ex parte Young,*
209 U.S. 123 (1908) .......................................................... *passim*

*Gibson v. Tex. Dep't of Ins. - Div. of Workers' Comp.*,
700 F.3d 227 (5th Cir. 2012) .......................................................... 15

*Green v. City of Raleigh*,
523 F.3d 293 (4th Cir. 2008) .......................................................... 16

*In re Application of Dow Jones & Co.*,
842 F.2d 603 (2nd Cir. 1988)..................................................... 19, 24

*In re G. & A. Books, Inc.*,
770 F.2d 288 (2nd Cir. 1985).......................................................... 16

*In re Murphy-Brown, LLC*,
907 F.3d 788 (4th Cir. 2018) ..................................................... 17, 18

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......................................................... 31

*McBurney v. Cucinelli*,
616 F.3d 393 (4th Cir. 2010) ............................................... 36, 38, 40

*NAACP v. Jones*,
131 F.3d 1317 (1997)........................................................... 34

*Nash v. Taylor*,
Civil Action No. 5:12cv077, 2013 U.S. Dist. LEXIS 38765 (W.D. Va. Mar. 19, 2013) ........ 36

*Near v. Minnesota*,
283 U.S. 697 (1931) ........ 18, 20, 21, 22

*Nebraska Press Ass'n v. Stuart*,
427 U.S. 539 (1976) ........ 2, 15, 18

*Novak v. City of Parma*,
932 F.3d 421 (6th Cir. 2019) ........ 15

*Organization for a Better Austin v. Keefe*,
402 U.S. 415 (1971) ........ 15

*Pa. Family Inst., Inc. v. Black*,
489 F.3d 156 (3d Cir. 2007) ........ 34

*Papania v. United States*,
715 F. Supp. 3d 789 (E.D. Va. 2024) ........ 12

*Pell v. Procunier*,
417 U.S. 817 (1974) ........ 19, 24, 26

*Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*,
926 F.3d 97 (4th Cir. 2019) ........ 37

*Pinkley, Inc. v. City of Frederick, Md.*,
191 F.3d 394 (4th Cir. 1999) ........ 12

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984) ........ 18, 23, 32

*Singleton v. Md. Tech. & Dev. Corp.*,
103 F.4th 1042 (4th Cir. 2024) ........ 37

*Smith v. Daily Mail Pub. Co.*,
443 U.S. 97 (1979) .......... 27, 28

*Soderberg v. Carrion*,
999 F.3d 962 (4th Cir. 2021) .......... 27, 28, 29

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 31

*Stephens v. County of Albemarle*,
524 F.3d 485 (4th Cir. 2008) .......... 33

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*,
425 U.S. 748 (1976) .......... 33

*Waste Mgmt. Holdings v. Gilmore*,
252 F.3d 316 (4th Cir. 2001) .......... 38, 39

*Watchtower Bible & Tract Society of N.Y., Inc. v. Vill. of Stratton*,
536 U.S. 150 (2002) .......... 16

**RULES**

Federal Rule of Appellate Procedure 5 .......... 3

**STATUTES**

28 U.S.C. § 1291 .......... 3

28 U.S.C. § 1292(b) .......... 3, 11

42 U.S.C. § 1983 .......... 10

Va. Code § 16.1-305 .......... 25

Va. Code § 17.1-225 .......... 4

Va. Code § 17.1-292 .......... 5

Va. Code § 17.1-293 ........ *passim*

Va. Code § 19.2-389 ........ 25

Va. Code § 32.1-127.1:03 ........ 25

Va. Code § 52-48 ........ 25

## INTRODUCTION

The plaintiffs have spent years trying to invalidate Virginia's laws related to remote access to online court records. Last year, this Court ruled that they had no constitutional right to access online court records directly, and that they lacked standing to challenge their indirect access via Virginia Code § 17.1-293(H) (the "Dissemination Restriction"). *See Courthouse News Serv. v. Smith*, 126 F. 4th 899 (4th Cir. 2025). That statute permits Virginia attorneys to have remote online access to court records, and subsection (H) gives clerks of court discretion to revoke that access if an attorney sends those obtained-online records to a third party.

Back again, the plaintiffs now assert the discrete theory of "willing speaker" standing: because the Dissemination Restriction does not restrict their speech, they now assert a right to receive speech from a willing speaker, a Virginia-licensed attorney with online access, who cannot share court records with them because of the Dissemination Restriction. JA 57. And the plaintiffs now assert a single claim: that the Dissemination Restriction is a prior restraint of their alleged willing

speaker's speech under the First Amendment that cannot survive constitutional scrutiny. But the plaintiffs' claim suffers from several flaws.

The most apparent is that the Dissemination Restriction is not a "prior restraint" at all. "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 556 (1976). But the plaintiffs' expansive theory of what a prior restraint is would also make it a "most common" infringement—countless statutes would be subject to its exacting standards. Thankfully, the plaintiffs' lack of any authority for their expansive understanding of what a "prior restraint" is prevents this uncertain future.

The plaintiffs' claims also suffer from two basic facts: they already have access to the *very same court records* for which they claim a "right to listen," and there has been no threat of enforcement by the defendant clerks of court against their alleged willing speaker. These defects mean that the plaintiffs lack standing and that the defendant clerks are entitled to Eleventh Amendment immunity from suit.

## Statement of Jurisdiction

In this interlocutory appeal, the elected clerks for the Circuit Courts of Richmond City, Roanoke City, and Bristol City, respectively ("Clerks") appeal the decision of the United States District Court for the Western District of Virginia, Abingdon Division. The district court denied the Clerks' Motions to Dismiss under Rule 12(b)(1) and 12(b)(6). The district court's decision denying the Rule 12(b)(1) motion as to Eleventh Amendment immunity is immediately appealable as a collateral order. *See* 28 U.S.C. § 1291.

On July 2, 2026, the district court certified in writing that its Order denying the Motions to Dismiss as to the other issues raised therein met the criteria for 28 U.S.C. § 1292(b) certification. JA 682. After the Clerks timely filed a Petition for Appeal under 28 U.S.C. §§ 1292(b) and Rule 5(a), this Court granted the Petition. JA 694.

## Issues Presented for Review

1. Whether Virginia Code § 17.1-293(H), which relates to remotely-accessed court records in Virginia, is a prior restraint under the First Amendment.

2. Whether the plaintiffs have standing under the willing speaker doctrine to assert that Code § 17.1-293(H) is an unconstitutional prior restraint on speech.

3. Whether Plaintiffs sufficiently pleaded a threat of enforcement on the part of the Clerks such that Plaintiffs can overcome Eleventh Amendment immunity.

## STATEMENT OF THE CASE

This case is the latest in a series of lawsuits brought by CNS and the plaintiffs challenging Virginia's statutory scheme relating to online access to nonconfidential court records. CNS is a California corporation that summarizes civil court pleadings and court cases. JA 37-38. The remaining plaintiffs are part of Lee Enterprises, Inc., which "is the fourth largest newspaper publisher" in the country. JA 43.

### 1. VIRGINIA'S STATUTORY SCHEME FOR ONLINE REMOTE ACCESS TO CIVIL COURT RECORDS.

The Clerks are responsible for the maintenance and administration of court records in their respective jurisdictions. JA 36-37. Clerks are not required to offer remote online access to nonconfidential records—it is discretionary. Va. Code § 17.1-225 ("[Clerks] *may* provide remote access, including Internet access, to all nonconfidential court records" (emphasis added)). There is no statutory restriction on who clerks can offer remote access to—be it an attorney or a member of the public. *See* Va. Code §§ 17.1-225, -293. If a clerk decides to offer remote access,

there is certain confidential information and records that are accessible only to Virginia-licensed attorneys and their agents. *See* Va. Code § 17.1-293(D) and (E)(7).

"Nonconfidential court records" are all court records and pleadings, except those deemed confidential via "applicable law or sealed pursuant to court order." Va. Code § 17.1-292(B); *see* JA 62-77. For instance, "social security number[s] or other identification numbers"—such as a driver's license or banking number—are confidential and cannot be disclosed to the public, regardless of whether a court record is accessed electronically or physically. Va. Code § 17.1-293(A). Plaintiffs do not challenge any of these provisions.

Subsection H—the Dissemination Restriction challenged by the Complaint in this case—then states:

> Nothing in this section shall be construed to permit any data accessed by secure remote access to be sold or posted on any other website or in any way redistributed to any third party, and the clerk, *in his discretion, may deny secure remote access to ensure compliance with these provisions*. However, the data accessed by secure remote access may be included in products or services provided to a third party of the subscriber provided that (i) such data is not made available to the general public and (ii) the subscriber maintains administrative, technical, and security safeguards to protect the confidentiality, integrity, and limited availability of the data.

Va. Code § 17.1-293(H) (emphases added).

Of the clerks who offer remote access, the vast majority use the Officer of the Court Remote Access ("OCRA") system. JA 45-46. OCRA allows its users to view an "electronic image" scan of nonconfidential court records online. *Id.* Any person who wishes to use OCRA must seek approval from each individual court that provides such remote access. JA 47. For attorneys who use OCRA to remotely access court records and pleadings in Richmond, Bristol, and Roanoke, the Clerks typically require the attorneys to sign a subscriber agreement. JA 78-99. Such agreements limit OCRA access to only Virginia-barred and pro hac vice attorneys and their staff and select government agencies. JA 47-48.

### 2. THE OCRA-OBTAINED COURT RECORDS AT ISSUE ARE AVAILABLE AT THE COURTHOUSE TO PLAINTIFFS AND THE PUBLIC.

As the plaintiffs pleaded in their Complaint, the records for which they seek access are available to them already. Court pleadings and records are available to the public at each "physical courthouse" in which the record is stored. JA 49-50, 67. Such records can be accessed via "courthouse public access terminals" or "in person." JA 49-51.

Indeed, Plaintiffs can access, and have accessed, court pleadings and records by visiting Virginia circuit court courthouses in person. JA 40, 43. Plaintiffs' employees, for instance, "visit[] their assigned court on a daily or weekly basis to review all the complaints filed." *Id.* In fact, over a five-day period, Plaintiffs' employees retrieved court pleadings and records from 25 courthouses across Western Virginia. JA 51, 100-11. As Plaintiffs plead, the "documents on OCRA are the same documents that have been made available on courthouse public access terminals." JA 49-50. "There is no difference in the content of the court records that Plaintiffs and other members of the press and public must travel to each individual court to see . . . they are the same record." JA 50, 73. The only difference "is the time, distance, and expense" to access the physical version of the same record. *Id.*

### 3. PLAINTIFFS' PREVIOUS CHALLENGE TO THE DISSEMINATION RESTRICTION.

Courthouse News, one of the Plaintiffs in this case, previously filed a similar lawsuit in the Eastern District of Virginia challenging the constitutionality of limiting access to Virginia attorneys (the "Access Restriction") and the Dissemination Restriction. *See Courthouse News Serv. v. Smith*, 126 F.4th 899, 909 (4th Cir. 2025). The Eastern District

of Virginia granted summary judgment to the defendants and dismissed these claims. *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349, 370 (2022) (Hudson, J.), *aff'm in part, vacated in part* 126 F.4th 899.

Of note here, the Eastern District upheld the Dissemination Restriction as a content-neutral time, place, and manner regulation justified by the Commonwealth's interests in the orderly and efficient administration of justice and narrowly tailored to the protection of sensitive personal information contained in court filings. *Id.* at 360–70. The Court also held that the Dissemination Restriction in Virginia Code § 17.1-293(H) did not prohibit Courthouse News from "redistribut[ing] information from civil court records obtained physically at the courthouse." *Id.* at 370.

On appeal, this Court affirmed Judge Hudson's decision that the Access Restriction did not violate the First Amendment: "[b]y limiting online access to this relatively small, vetted group of individuals [Virginia attorneys] who are strongly incentivized to follow OCRA's rules and who can be effectively disciplined for misconduct, the Access Restriction furthers the Commonwealth's interest in safeguarding sensitive personal information in court records." *Courthouse News*, 126 F.4th

at 913. As this Court observed, "attorneys and their staff do not pose the same threat to sensitive personal information as the public at large." *Id.* at 915.

As to the Dissemination Restriction, this Court held that Courthouse News lacked standing to challenge it because it lacked a constitutional right of access to those records. *Id.* at 917. The Dissemination Restriction

> *does not impose any restraint on Courthouse News's speech*, because it applies only to individuals with remote online access to court records. Courthouse News does not currently have such access, and we have determined that it is not constitutionally entitled to receive that access.

*Id.* (emphasis added). Although CNS suggested that the Dissemination Restriction indirectly injured it by hindering its ability to acquire electronic court records from its attorneys with online access, this Court said the assertion of derivative injury was "too speculative to support standing." *Id.*

### 4. PLAINTIFFS' CLAIM THAT THE DISSEMINATION RESTRICTION IS A PRIOR RESTRAINT.

Plaintiffs then filed this Complaint, explicitly seeking to remedy the standing defect identified by this Court. Specifically, Plaintiffs allege that they have asked CNS' privately-retained Virginia attorney,

David Lacy ("Mr. Lacy"), to provide them with certain civil court pleadings he obtained through his online access. JA 33. The Complaint alleges that Mr. Lacy would have provided such pleadings, "but he was compelled to tell [Plaintiffs] that he is prohibited" from doing so by the Dissemination Restriction. *Id.* If Mr. Lacy had conveyed the pleading, Plaintiffs allege that he "*may* have [had his] access revoked" and "*may* [have been] subject to further sanctions, including disbarment." JA 31, 49 (emphases added).

The Complaint asserted a single First Amendment claim under 42 U.S.C. § 1983. Specifically, the Complaint asserts that the Dissemination Restriction is unconstitutional on its face and as applied as a "prior restraint." JA 57. The Complaint accordingly asks this Court to declare Virginia Code § 17.1-293(H) unconstitutional and enjoin all enforcement of it, "including disbarment" of attorneys for violating the Dissemination Restriction. JA 58-59.

**5. THE DISTRICT COURT'S RULINGS.**

The defendants filed Motions to Dismiss under Rule 12(b)(1) and 12(b)(6), arguing that the Dissemination Restriction is not a prior restraint based on its plain meaning, that the plaintiffs lacked standing,

and that they were entitled to Eleventh Amendment immunity. The district court denied the Motions, finding that the defendants were not entitled to Eleventh Amendment immunity and that the plaintiffs alleged enough for standing under the willing speaker doctrine. JA 10-12. Relying on Judge Gregory's dissenting opinion in *Courthouse News Serv.*, the district court then found that the Dissemination Restriction was a prior restraint and thus subject to strict scrutiny. JA 14-15.

After all the defendants noticed their interlocutory appeal of the district court's ruling on Eleventh Amendment immunity, the Clerks asked for certification under 28 U.S.C. § 1292(b) as to Plaintiffs' standing and whether the Dissemination Restriction is a prior restraint. The district court granted the Motion to Certify by order and opinion dated July 2, 2026. JA 684. This Court then granted the Clerks' Petition for Permission to Appeal and consolidated the appeals.

## **Argument**

The issue on appeal is not whether the Dissemination Restriction violates the First Amendment under any given theory or level of scrutiny. As the district court held, the Complaint's "*sole claim* challenges the Dissemination Restriction as an unconstitutional prior restraint." JA 684,

730 (emphasis added). The core issue on appeal is thus fundamental: is the Dissemination Restriction a prior restraint, at all?

It is not. The Dissemination Restriction lacks the requisite features of prior restraints: it is not a court order or injunction, nor does it permit injunctive relief as a remedy. Most importantly, it does not prohibit speech *before* it occurs, which is what distinguishes a prior restraint from other forms of free speech regulations.

Because the Dissemination Restriction is not a prior restraint, the Complaint fails and should be dismissed. *Papania v. United States*, 715 F. Supp. 3d 789, 802 (E.D. Va. 2024) ("A case may not proceed to trial on 'an unpleaded theory of recovery' without 'express or implied consent of the parties.'") (quoting *Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 401 (4th Cir. 1999)). But even if the Dissemination Restriction is a prior restraint, the plaintiffs lack an Article III prior restraint injury because the Dissemination Restriction does not prevent the speech at issue from occurring in other forms. Lastly, the Eleventh Amendment immunizes the Clerks because the Complaint fails to allege that they have ever threatened to revoke Mr. Lacy's OCRA access.

## 1. PRIOR RESTRAINTS ARE DISTINCT FROM SUBSEQUENT PUNISHMENTS.

As argued below, the Dissemination Restriction is not a prior restraint as a matter of law, the plaintiffs lack standing, and the Eleventh Amendment applies to the Clerks. The jurisprudential context of prior restraints supports these conclusions, so it is helpful to start there.

### 1.1 If a regulation is a prior restraint, courts apply one of the strictest forms of scrutiny.

The First Amendment prohibits "abridging the freedom of speech." Although short and simple in text, First Amendment jurisprudence is layered and varied. This is perhaps most true when it comes to the level of scrutiny to apply to speech. Courts do not apply the same level of constitutional scrutiny to every regulation of speech. Instead, the applicable level of scrutiny—be it rational basis, intermediate, strict, or the various levels in between—depends on the form and function of the statute or regulation at issue.

Regulations of "professional conduct," for instance, receive a deferential scrutiny standard with "less protection." *360 Virtual Drone Servs. LLC v. Ritter*, 102 F.4th 263, 272 (4th Cir. 2024) (citations omitted). Indeed, "the fact that a regulation directs or prohibits particular speech in

the professional context does not automatically mean it is aimed at speech" and warrants strict scrutiny. *Id.* at 274. Instead, such regulations warrant a "loosened intermediate-scrutiny test" where the regulation "must show a substantial state interest and a solution that is sufficiently drawn to protect that interest." *Id.* at 276, 279 (citations and internal quotation marks omitted).

By comparison, regulations "of the time, place, and manner of speech" receive a slightly heightened form of intermediate scrutiny. *Id.* at 271. Such regulations "must be narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication." *Id.* at 276 (citations and internal quotation marks omitted).

A "content-based regulation of speech as speech," in turn, "would trigger strict scrutiny." *Id.* at 275 (emphasis omitted). Such regulations must be narrowly tailored to satisfy a compelling government interest. *Id.* at 277 (citation omitted).

A prior restraint of content-based speech is unique among these scrutiny standards. Unlike other forms of speech regulation that punish speech *after* it occurs, a prior restraint prevents the speech *before* it takes place. *Alexander v. United States*, 509 U.S. 544, 549 (1993). Accordingly,

prior restraints "are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 556 (1976). A "prior restraint on expression," therefore, is not only subject to strict scrutiny, but it carries "a heavy presumption against its constitutional validity." *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971) (internal quotation marks omitted).

### 1.2 Courts strictly police the line between a prior restraint and other speech regulations.

Because of this heightened scrutiny standard, courts maintain the "distinction between prior restraints and subsequent punishments." *Alexander v. United States*, 509 U.S. 544, 553–54 (1993). Courts typically do not extend the prior restraint definition to a subsequent punishment "after publication," *Nebraska Press*, 427 U.S. at 559, or laws that "penalize *past* speech," *Gibson v. Tex. Dep't of Ins. - Div. of Workers' Comp.*, 700 F.3d 227, 235 (5th Cir. 2012) (emphasis added). Simply put, "a punishment for disfavored speech[] is not a prior restraint." *Novak v. City of Parma*, 932 F.3d 421, 432 (6th Cir. 2019).

Courts have thus historically only applied the prior restraint definition, and its exacting scrutiny, to two kinds of regulations: the

statutory licensing of speech, and court "gag orders" of certain court proceedings.

### 1.3 A classic prior restraint is a licensing scheme that requires pre-approval to speak.

The "classic form of prior restraint" is the government's "licensing or censorship before speech takes place." *Alexander*, 509 U.S. at 569 (Souter, J., dissenting). These regulations are "systems of administrative *preclearance* that give public authorities the power to bar the publication or presentation of material." *In re G. & A. Books, Inc.*, 770 F.2d 288, 296 (2nd Cir. 1985) (emphasis added) (citing authorities) (internal citations omitted). These are laws that require "prior approval of a government . . . censor." *Alexander*, 509 U.S. at 553 n.2. Examples of such "preclearance" regimes are:

- Licensing regimes, which condition speech on obtaining a license subject to the discretion of the government, *see, e.g., City of Lakewood v. Plain Dealer Publ'g. Co.,* 486 U.S. 750, 755–56 (1988);
- Regulations that require registration before one can utter speech, *see, e.g., Watchtower Bible & Tract Society of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 164–69 (2002); or
- Parade or protest permitting requirements that impose pre-approval on the speech, *see Green v. City of Raleigh*, 523 F.3d 293, 300–01 (4th Cir. 2008) (holding that such permits are constitutional if content-neutral with appropriate procedural safeguards).

The Complaint, however, does not allege that the Dissemination Restriction is a licensing regime that requires preapproval for speech. Instead, the plaintiffs argue it is a form of gag order. JA 49, 217, 235-36, 568.

### 1.4 Courts have extended the prior restraint definition to certain "gag" orders.

While a preclearance licensing regime is a classic form of prior restraint, courts have extended prior restraint to certain types of court orders and injunctions. A prior restraint thus includes "a legal *order* forbidding speech 'issued in advance of the time that such communications are to occur.'" *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cty.*, 854 F. App'x 521, 525 (4th Cir. 2021) (unpublished opinion) (emphasis added) (quoting *Alexander*, 509 U.S. at 550 (emphasis added)). "Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." *Alexander*, 509 U.S. at 550.

A prior restraint thus includes "gag orders . . . because they are content based." *In re Murphy-Brown, LLC*, 907 F.3d 788, 797 (4th Cir. 2018). These orders include:

- An order enjoining future violations of a state statute, which permitted an injunction against "a scandalous and defamatory newspaper, magazine or other periodical," *Near v. Minnesota*, 283 U.S. 697, 701–02, 705 (1931);
- A "gag order" prohibiting reporting or commentary on a pending criminal trial, *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976); or
- A "sweeping" gag order that "prohibited all parties and their lawyers, representatives, and agents" and witnesses from speaking with "any public communications media," *In re Murphy-Brown, LLC*, 907 F.3d 788, 792–93, 802 (4th Cir. 2018).

The plaintiffs specifically analogize the Dissemination Restriction to a "gag order."

### 1.5 Other orders regulating speech are not prior restraints.

Not every court order regulating speech is a prior restraint. A protective order "prohibiting dissemination of discovered information before trial," for example, "is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). Unlike a gag order—which prohibits a listener from ever hearing the speech at issue—a protective order allows a party to "disseminate the identical information covered by the protective order as long as the information is gained *through means independent of the court's processes*." *Id.* at 34 (emphasis added).

Moreover, a prior restraint of *speech* is distinct from an order regulating the *access* and use of information. A prior restraint does not include "a court order that both granted [a litigant] access to [] information and placed restraints on the way in which the information might be used." *Id.* at 32. The First Amendment simply does not guarantee access to non-public information:

> It is one thing to say that a journalist is free to seek out sources of information not available to members of the general public, that he is entitled to some constitutional protection of the confidentiality of such sources. It is quite another thing to suggest that the Constitution imposes upon government the affirmative duty to *make available to journalists sources of information not available to members of the public generally*. That proposition finds no support in the words of the Constitution or in any decision of this Court.

*Pell v. Procunier*, 417 U.S. 817, 834–35 (1974) (emphasis added) (internal citations omitted). Stated succinctly, a judicial order that merely "limits the flow of information readily available to news agencies" is not a prior restraint. *In re Application of Dow Jones & Co.*, 842 F.2d 603, 608–09 (2nd Cir. 1988).

### 1.6 Statutes that prohibit speech are not prior restraints.

Courts also do not extend this "gag order" definition of a prior restraint to statutes that merely prohibit speech. To hold otherwise would

blur the distinction between prior restraints and subsequent statutorily-prescribed punishments. Instead, courts only extend the doctrine to statutes that specifically authorize injunctive orders against publications.

*Near v. Minnesota* is illustrative. There, a Minnesota statute authorized judicial proceedings to enjoin a "malicious, scandalous and defamatory newspaper, magazine or other periodical." *Near*, 283 U.S. at 701–02. A local government then invoked that statute, sued a newspaper, and obtained an order from a court enjoining the newspaper from future violations of the statute. *Id.* at 703–05. The Supreme Court held this was an unconstitutional prior restraint. *Id.* at 722–23.

But the Court clarified that the "object of the statute is not punishment, in the ordinary sense, but suppression of the offending newspaper or periodical." *Id.* at 711. "This suppression is accomplished *by enjoining publication* and that the restraint is the object and effect of the statute." *Id.* at 712 (emphasis added). The authority of the court to enjoin future violations put the newspaper under "an effective censorship" because "resumption of the publication" now becomes, via court order, "punishable as a contempt of court by fine or imprisonment." *Id.* Such an order "would lay a permanent restraint upon the publisher" such that resuming speech

"would depend upon the court's ruling" and the vague definition of "scandalous." *Id.*

> As has been noted, the statute in question *does not deal with punishments*; it provides for no punishment, except in case of contempt for violation of the court's order, but for suppression and injunction, that is, for restraint upon publication.

*Id.* at 715 (emphasis added). As the dissent noted, the "restraint" was the "order and judgment permanently enjoining" the newspaper from future publication. *Id.* at 736 (Butler, J., dissenting); *see also Alexander*, 509 U.S. at 569 ("But in *Near* the publisher, because of past wrongs, was subjected to active state intervention for the control of future speech.") (Souter, J., dissenting).

### 2. THE DISSEMINATION RESTRICTION IS NOT A PRIOR RESTRAINT.

In light of the above jurisprudential context, the Complaint fails to state a prior restraint claim. The Complaint does not allege that the Dissemination Restriction is invalid as a time, manner, place restriction; as a regulation of professional conduct; or as a content-based regulation. Instead, the "sole claim" in the Complaint is that the Dissemination Restriction is an unconstitutional prior restraint. JA 684, 730. Specifically, the plaintiffs allege that the Dissemination Restriction is an unconstitutional "gag order." JA 165, 183, 469.

The Dissemination Restriction, however, lacks any of the hallmarks of a "gag order." It is neither an order, nor does it permit injunctive relief. It also does not prevent the speech from occurring in the first place. Because the Complaint fails to identify a prior restraint, its "sole" prior restraint claim fails.

### 2.1 The Dissemination Restriction is not a gag order, nor does it provide for injunctive relief.

The plaintiffs allege that the Dissemination Restriction is an unconstitutional gag order. The Dissemination Restriction lacks this fundamental attribute of prior restraints, for three reasons.

*First*, and most simply, the Dissemination Restriction is not an order at all. It is a statute. But neither the Supreme Court nor the federal circuit courts of appeal have ever held that a mere statutory prohibition of speech, alone, constitutes a prior restraint. Instead, a statutory scheme only becomes a prior restraint if it authorizes "enjoining publication" that subjects the speaker to "contempt of court by fine or imprisonment." *Near*, 283 U.S. at 712.

The Dissemination Restriction lacks any of these characteristics. It does not permit any judicial proceeding to enjoin an OCRA user. Nor does it include any harsh remedies like contempt or imprisonment. In fact, it

does not affect the press directly at all. The only punishment contemplated by the statute is revocation of the OCRA user's OCRA access. That consequence, however, occurs only *after* the alleged speech occurs, and does not punish the press's ability to report on an OCRA pleading unlawfully conveyed to reporters.

Moreover, even if the Dissemination Restriction could lead to an injunction proceeding, the Complaint fails to allege that the Clerks have ever sought an injunction against an OCRA user. "[U]ntil an order forbidding speech issues, no such restraint has yet been imposed." *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cty.*, 854 F. App'x 521, 525 (4th Cir. 2021) (unpublished opinion).

*Second*, even if the Dissemination Restriction authorized the entry of a court order, it is still not a prior restraint because it authorizes OCRA users to "disseminate [] identical information . . . gained through means independent of [OCRA's] processes." *Seattle Times*, 467 U.S. 34.

Nothing in the Dissemination Restriction prohibits Mr. Lacy or any OCRA user from transmitting a court pleading if acquired at the courthouse. As the Complaint concedes, "the same [pleading] documents" in OCRA are "available on courthouse public access terminals" located at

the courts themselves. JA 49–50. It alleged that there "is no difference in the content of the court records" between those available at "each individual court" and those obtained via OCRA. JA 50. "[T]hey are the same records." *Id.* In fact, Plaintiffs concede they have been able to retrieve Virginia court records and report on them—just not as quickly as they like. JA 37–38, 40, 43.

Like a protective order, the Dissemination Restriction only regulates the access and use of a *source* of information "not available to members of the public generally." *See Pell*, 417 U.S. at 834–35. It merely "limits the flow of information." *In re Application of Dow Jones & Co.*, 842 F.2d at 608–09. Along with the Access Restriction, the Dissemination Restriction merely permits who can access court records electronically, and then it regulates the use of information gained through that selective access.

To hold that the Dissemination Restriction is prior restraint would effectively give Plaintiffs, or anyone else, access to OCRA via an agent. But the Plaintiffs—and others—"are not constitutionally entitled to receive" OCRA access. *Courthouse News Service*, 126 F.4th at 917.

Plaintiffs cannot circumvent the constitutional Access Restriction via an agent.

*Third* and finally, Plaintiffs argument would expose many other statutes and regulations to the heightened prior restraint scrutiny. Like the Dissemination Restriction, several Virginia statutes regulate who can access certain kinds of information and then prohibit use of that information. *See, e.g.,* Virginia Code §§ 16.1-305 (juvenile records), 52-48 (intelligence documents), 19.2-389 (criminal history records), 32.1-127.1:03 (health records). Because a prior restraint carries one of the strictest scrutiny standards in First Amendment law, Plaintiff's argument could facially invalidate all of these statutes, leaving public institutions unable to control the flow of confidential or non-public information.

### 2.2 The Dissemination Restriction is not a licensing of speech, which Plaintiffs do not plead.

Plaintiffs have only argued that the Dissemination Restriction is a prior restraint because it is an unconstitutional gag order. Neither the Complaint, nor Plaintiffs arguments at the district court, advanced any theory that the Dissemination Restriction constitutes an unlawful licensing regime. This Court, therefore, cannot consider such a theory.

But even if this Court went beyond Plaintiffs' claimed theory, the Dissemination Restriction still fails to constitute any other kind of prior restraint. The statute does not condition speech on approval in any way: it does not require that Mr. Lacy or other OCRA users obtain permission from the Clerks *before* sending an OCRA pleading to a third party. Instead, the Dissemination Restriction simply gives court clerks discretion to revoke access *after speech has occurred*. That is, *if* a licensed attorney with online access to court records "speaks" by sharing those records with a third party, *then* the clerks can revoke that attorney's OCRA access in their discretion. Like any legal enforcement mechanism, in other words, the statute permits clerks to impose a consequence for violating it.

In other words, the Dissemination Restriction and the OCRA system are not licenses to *speak*; they are, at best, licenses to information *access*. The latter, however, is not a prior restraint that warrants First Amendment protection. *See Pell*, 417 U.S. at 834–35.

Because the Dissemination Restriction does not require "prior approval of a government . . . censor," *see Alexander*, 509 U.S. at 553, n.2, it fails this form of prior restraint too.

### 2.3 The district court misrelied on *Soderberg* and the dissent in *Courthouse News.*

The district court failed to address the fundamental aspects of a prior restraint. Instead, after citing Judge Gregory's dissent in *Courthouse News*, and this Court's decision in *Soderberg v. Carrion*, 999 F.3d 962, 966–67 (4th Cir. 2021), the court briefly stated only that Plaintiffs had "plausibly alleged that the Dissemination Restriction constitutes a prior restraint on speech for prohibiting the dissemination of certain information to the public." JA 15.

But the statute at issue in *Soderberg* "prohibit[ed] and punish[ed] the broadcasting of the official court recordings of state criminal proceedings," which were already available to the public. *Id.* at 964. Violators were subject to criminal contempt. *Id.* Unlike this case and the Dissemination Restriction, in other words, the statute at issue there restrained the speech of the plaintiff news media and criminalized publication of public information.[1]

[1] The same distinction applies to *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), and *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979), on which this Court relied for its decision in *Soderberg*. Both cases analyzed statutes that restricted the speech of news media by imposing liability for publication of information. *See Cox* at 495 and *Daily Mail* at 98.

What is more, *Soderberg* was not a prior restraint case and merely restated a well-established rule from prior Supreme Court decisions: when a restriction on speech operates as a "penal sanction for publishing information released to the public," it is subject to strict scrutiny. *Id.*; *see id.* at 968-69 ("So long as the information was lawfully obtained, 'the state may not punish its publication except when necessary to further [a sufficiently substantial] interest.'") (quoting *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 104 (1979)). The Complaint, however, did not plead a subsequent punishment claim. Its "sole claim" was prior restraint.

The dissent in *Courthouse News Services* made the same mistake as the district court and applied *Soderberg* to the Dissemination Restriction to find that it is a prior restraint. 128 F.4th at 925-26 (Gregory, J., dissenting). But the Dissemination Restriction does not restrict Plaintiffs' speech, as this Court has already held. *Courthouse News*, 128 F.4th at 917. Nothing in the Dissemination Restriction punishes Plaintiffs for any publication whatsoever: if they were to obtain an OCRA record and publish it, the statute would have nothing to say about it. At best, and as Plaintiffs claim here, it restricts the speech *of Mr. Lacy and other OCRA users* and only implicates the press indirectly as would-be listeners of

OCRA-obtained speech. *Soderberg* and the cases on which it relies, therefore, are inapplicable.

~ ~ ~

The Supreme Court has noted the importance of "delineat[ing] with some precision the defining characteristics of a prior restraint." *See Alexander*, 509 U.S. at 553-54. There is no support for Plaintiffs' broad definition of a prior restraint as pleaded in their Complaint, and this Court should reverse the decision of the district court and dismiss the Complaint.

### 3. THE DISTRICT COURT ERRED BY FINDING THAT THE PLAINTIFFS HAD STANDING TO CHALLENGE THE DISSEMINATION RESTRICTION.

Even assuming the Dissemination Restriction is a prior restraint, Plaintiffs claim still fails because they failed to allege that they are unable to hear the speech at issue. It again helps to precisely identify the speech on which Plaintiffs base their claimed right-to-listen: the OCRA-obtained court record itself. They are not asserting a right to receive any editorial or legal annotations on those records: they assert a right to receive the bare record itself.

In their Complaint, Plaintiffs explicitly seek to overcome this Court's finding in *Courthouse News* that the Dissemination Restriction "does not impose any restraint on [CNS'] speech." *Courthouse News Serv.*, 126 F.4th at 917. So Plaintiffs now assert a right to the records themselves via Mr. Lacy, an OCRA user, who allegedly wants to but cannot convey that speech because of the Dissemination Restriction. JA 33-34.

Plaintiffs' standing theory fails for two reasons: 1) Plaintiffs have not suffered an Article III injury because they already "listen" to the speech at issue; and 2) Plaintiffs have disavowed showing their injury derives from that of their alleged willing speaker, a requirement under the willing speaker doctrine.

### 3.1 Plaintiffs lack an injury in fact because they already have access to the "same records" on which they base their asserted "right to listen."

Every plaintiff in federal court must satisfy three elements of standing under Article III of the Constitution:

> (1) an injury-in-fact that is "concrete and particularized and actual or imminent,"
>
> (2) "a causal connection between the injury and the conduct complained of" that renders the injury "fairly traceable" to the defendant's actions; and
>
> (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The complaint must plead "necessary factual allegations" to support each of these elements. *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009). An injury in fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted).

In First Amendment cases, a plaintiff can satisfy the requirement of an injury-in-fact "by a sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression." *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (cleaned up). A prior restraint claim is "based on a restriction that chills potential speech before it happens, rather than an adverse action taken in response to actual speech." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010).

Plaintiffs have no injury in fact because they already have access to the speech for which they claim a "right to listen." Again, Plaintiffs assert a discrete injury: that the Dissemination Restriction prevents them from "listening" to the court records that their willing speaker, Mr. Lacy,

would like to send them. But Plaintiffs already "listen" to the same speech because they already access the court records at issue. In their Complaint, Plaintiffs concede that "the same [pleading] documents" are "available on courthouse public access terminals" located at the courts themselves. JA 49-50. They also plead that there "is no difference in the content of the court records" between those available at "each individual court" and those obtained via OCRA: "they are the same records." JA 50. Plaintiffs further concede that they regularly access those "same records." JA 37-38, 40, 43.

Plaintiffs cannot claim an injury to their right to listen to speech that they already "listen" to. Simply put, the Dissemination Restriction does not impede reception of Virginia court records: they can and do obtain them already at Virginia's courthouses. Moreover, nothing prevents their alleged willing speaker, Mr. Lacy, from sharing court records with them either. The Dissemination Restriction only restricts access to a specific source of that same speech: the OCRA-obtained version. But, as explained above, restricting access to one means of otherwise-available speech does not cause a First Amendment injury. *See Seattle Times*, 467 U.S. at 32-34.

Because Plaintiffs already "listen" to the court records at issue, they have failed to allege an injury in fact and lack standing.

### 3.2 Plaintiffs have disavowed claiming any rights derivative of Mr. Lacy's as required by the willing speaker doctrine.

Under the willing speaker doctrine, the First Amendment "protects the right to receive information and ideas from a willing speaker." *Stephens v. County of Albemarle*, 524 F.3d 485, 492 (4th Cir. 2008) (internal quotation marks omitted). When a receiver-of-speech asserts the existence of a willing speaker, the First Amendment protection extends "to the communication, to its source and to its recipient both." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 756 (1976).

Under the willing speaker doctrine, Plaintiffs must assert an injury-as-listener that derives from the injury of their alleged willing speaker, Mr. Lacy. This Court referenced this principle when it held in *Courthouse News* that CNS' "assertion of derivative injury" was too speculative. 126 F. 4th at 917. This is because the rights of the speaker and the rights of the receiver-of-speech are reciprocal: "If there is a right to advertise, there is a reciprocal right to receive the advertising." *Va. State Bd. of Pharmacy* 425 U.S. at 757. The listener's rights, that is, are

reciprocal of the speaker's: "the right to listen depends entirely on the infringement on the rights of a willing speaker." *Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 166 (3d Cir. 2007); *NAACP v. Jones*, 131 F.3d 1317, 1322 n. 5 (9th Cir. 1997) ("[I]n *Virginia Pharmacy,* the Court found the listener's rights to *derive* from the existence of the speaker's rights.") (emphasis added).

Because a listeners' rights are "entirely derivative" of a speaker's rights, the "right to receive speech does not enlarge the rights" of the speaker. *Dow Jones & Co. v. Simon,* 842 F.2d 603, 608 (2d Cir. 1988). A listener's rights are no greater than that of the speaker. *Jones*, 131 F.3d at 1322; *see Pa. Family Inst.*, 489 F.3d at 166 ("If there is no infringement claimed by a speaker . . . there can be no violation of the right to listen.").

To plausibly allege standing in this case, then, Plaintiffs must allege facts that their right to listen—as derived from the rights to speak of their alleged willing speaker's—has been injured by the Dissemination Restriction, and that their willing speaker's rights to speak have been injured by the Dissemination Restriction too.

But the plaintiffs repeatedly disclaimed any rights—and thus any injury—that derived from Mr. Lacy. The plaintiffs disavowed "that

[their] standing is derivative of" the attorneys with online access. JA 207, 214, 216-18, 220 (repeatedly asserting a right to gather news as not derived from a willing speaker). Rather, the plaintiffs argued that they need not assert a derivative injury, and that their own right to "gather news" or "access" information stands independent of any injury suffered by the alleged willing speaker. *See id.*

Plaintiffs want to have it both ways. Because this Court has already held that the Dissemination Restriction does not restrict their speech, their Complaint challenges the statute for restricting Mr. Lacy's speech, to which they assert a right to listen. Now, though, they disavow any need to connect their injury to Mr. Lacy's, instead asserting a direct injury from the statute to their news gathering rights. This analytical path is inconsistent with what they pleaded, and cutoff by both the plain language of the statute and this Court's prior decision: simply put, the Dissemination Restriction "applies only to individuals with remote online access to court records," which Plaintiffs do not have and do not have a constitutional right to. *Courthouse News*, 126 F.4th at 917.

~ ~ ~

For these reasons, Plaintiffs lack standing to challenge the Dissemination Restriction. This Court should reverse the decision of the district court and dismiss the Complaint.

#### 4. THE CLERKS ENJOY ELEVENTH AMENDMENT IMMUNITY, AND THE *EX PARTE YOUNG* EXCEPTION DOES NOT APPLY.

The parties agree that the Clerks are state officials that enjoy Eleventh Amendment immunity, and that Plaintiffs have sued them in their official capacities. *See* JA 230-32; *Nash v. Taylor*, Civil Action No. 5:12cv077, 2013 U.S. Dist. LEXIS 38765, at *5 (W.D. Va. Mar. 19, 2013). Plaintiffs nonetheless argue that the *Ex parte Young* exception to that immunity applies. JA 230-32. That exception, however, only applies to state officials who "threaten and are about to commence proceedings" to enforce the "unconstitutional act" against the plaintiffs. *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010).

The Complaint never alleges that the Clerks have threatened to revoke Mr. Lacy's OCRA access or are about to commence any sort of judicial or administrative proceeding against him. Nor does it allege any threat against Plaintiffs themselves. The *Ex parte Young* exception thus does not apply, entitling the Clerks to Eleventh Amendment immunity.

### 4.1 The Eleventh Amendment is an immunity from suit.

The Eleventh Amendment provides that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment, therefore, creates a form of "sovereign immunity" for "state agents and state instrumentalities." *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 100 (4th Cir. 2019) (citation and internal quotes omitted). State officials thus cannot be sued in their official capacities in federal court. *Alabama v. Garrett*, 531 U.S. 356, 363 (2001); *Singleton v. Md. Tech. & Dev. Corp.*, 103 F.4th 1042, 1047 (4th Cir. 2024).

There are several exceptions to Eleventh Amendment immunity. These include where Congress abrogates Eleventh Amendment immunity, the state waives immunity via statute, or the plaintiffs invoke the *Ex parte Young* exception. *See Garrett*, 531 U.S. at 363 (2001); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Ex parte Young*, 209 U.S. 123, 159-60 (1908).

Plaintiffs here exclusively invoke the *Ex parte Young* exception.

### 4.2 The *Ex Parte Young* exception only applies to state officials who threaten enforcement of an unconstitutional act.

Even if a state official enjoys Eleventh Amendment immunity, the *Ex parte Young* exception allows a plaintiff "to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." *Antrican v. Odom,* 290 F.3d 178, 184 (4th Cir. 2002). This exception permits suit only if a plaintiff seeks "prospective, injunctive relief against a state officer to prevent *ongoing* violations of federal law." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (emphasis added). "The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is *threatened*, even if the threat is not yet imminent." *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001) (emphasis added).

Accordingly, the exception applies only to state officials "who *threaten and are about to commence* proceedings . . . to enforce against parties affected [by] an unconstitutional act.'" *McBurney*, 616 F.3d at 399 (emphasis added) (quoting *Ex parte Young,* 209 U.S. at 155–56). For instance, a state official who has "publicly endorsed" an allegedly

unconstitutional act is insufficient to satisfy *Ex parte Young*'s "threatened" requirement. *Waste Mgmt.*, 252 F.3d at 331.

### 4.3 The Complaint fails to allege that the Clerks have threatened to revoke OCRA access.

The "unconstitutional act" at issue is the Dissemination Restriction. That statute has only one method of enforcement—to revoke the OCRA access of an OCRA user. The Complaint thus had to plead that the Clerks have threatened to revoke OCRA access.

It fails to do so. The Complaint mentions only one specific OCRA user—Mr. Lacy. Yet, it does not allege that the Clerks have ever threatened to revoke his OCRA access. In fact, the Complaint fails to allege that these Clerks, specifically, have ever threatened to revoke OCRA access of any person, or even revoked such access of any person in the past.

To save the Complaint's failures, Plaintiffs will likely point to the OCRA subscription agreements. But the Complaint only attaches a blank OCRA subscription agreement. It never attaches any subscription agreement between Mr. Lacy and the Clerks. Moreover, the subscription agreement does nothing more than copy the language of the Dissemination Restriction. In other words, it does not threaten enforcement any more or less than the statute's plain language itself.

The Plaintiffs may also argue that the Clerks have a "special relationship" with the Dissemination Restriction that alone triggers the *Ex parte Young* exception. *See McBurney*, 616 F.3d at 399. But that is not enough for *Ex parte Young*. The state official must have both "some duty in regard to [] enforcement . . . *and* [] threaten and are about to commence proceedings." *McBurney*, 616 F.3d at 399 (emphasis added) (quoting *Ex parte Young,* 209 U.S. at 155–56). Stated differently, the state official must have both the responsibility to enforce the statute at issue and then take some affirmative threat to do so. The Complaint fails the latter criterion.

~ ~ ~

In short, the Complaint fails to show that the Clerks have threatened to exercise their discretion to revoke Mr. Lacy's OCRA access for transmitting an OCRA record to Plaintiffs, specifically. In fact, the Complaint fails to allege the Clerks have done so for any OCRA user. The *Ex parte Young* exception thus does not apply, and the Clerks are immune from suit in federal court.

## CONCLUSION

For these reasons, this Court should reverse the decision of the district court and dismiss Plaintiffs' claims.

Date: September 21, 2026

Respectfully submitted,

**EDWARD JEWETT**, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia;

**BRENDA HAMILTON**, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia; and

**KELLY FLANNAGAN**, in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia.

By Counsel

/s/ John P. O'Herron

William D. Prince IV (VSB No. 77209)
John P. O'Herron (VSB No. 79357)
Peter S. Askin (VSB No. 93371)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
wprince@t-mlaw.com
joherron@t-mlaw.com
paskin@t-mlaw.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limits because, excluding the parts of the document exempted by Fed. R. App. 32(f), this brief contains 7,909 words.

2. This brief complies with the typeface and type style requirements because it has been prepared in proportionally spaced typeface using Microsoft Word in 14pt Century Schoolbook.

/s/ John P. O'Herron
John P. O'Herron, Esq.
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, VA 23219-4140
Phone: (804) 698-6253
Fax: (804) 780-1813
Email: joherron@t-mlaw.com

<u>**Certificate of Filing and Service**</u>

I hereby certify that on this 21st day of September, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. Copies have been emailed to the following:


Roger Myers, Esq.
Rachel Matteo-Boehm, Esq.
Carlie Tenenbaum, Esq.
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
2100 East Cary Street, Suite 310
San Francisco, CA 94111
Telephone: (415) 675-3400
roger.myers@bclplaw.com
rachel.matteo-boehm@bclplaw.com
carlie.tenenbaum@bclplaw.com

*Counsel for Appellees*

Erin R. McNeill
Senior Assistant Attorneys General
John Gilbody
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone (ERM): (804) 692-0598
Facsimile (ERM): (804) 371-0200
jgilbody@oag.state.va.us
Emcneill@oag.state.va.us

*Counsel for Appellant Hade*

Dabney J. Carr IV, Esq.
Lauren H. Miller, Esq.
TROUTMAN PEPPER LOCKE LLP
P.O. Box 1122
Richmond, Virginia 23218
Telephone: (804) 697-1200
Facsimile: (805) 697-1339
dabney.carr@troutman.com
lauren.h.miller@troutman.com

*Counsel for Appellees*

/s/John P. O'Herron

John P. O'Herron, Esq.
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, VA 23219-4140
Phone: (804) 698-6253
Fax: (804) 780-1813
Email: joherron@t-mlaw.com