No. 26-2043

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

COURTHOUSE NEWS SERVICE; LEE ENTERPRISES, INCORPORATED, and LEE BHM, LLC, Publisher of the Richmond Times-Dispatch, The Roanoke Times, Bristol Herald Courier, Lynchburg News and Advance, Fredericksburg Freelance Star and The Daily Progress,

*Plaintiffs-Appellees,*

– v. –

EDWARD JEWETT, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia; BRENDA HAMILTON, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia; and KELLY FLANNAGAN, in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Western District of Virginia
Case No. 1:25-cv-00075-JPJ-PMS

---

**BRIEF OF AMICI CURIAE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND 35 MEDIA ORGANIZATIONS IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE**

---

*Counsel block on next page*

Gabriel Rottman, Esq.
*Counsel of Record for*
*Amici Curiae*
Lisa Zycherman, Esq.
Marietta Catsambas, Esq.*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300
grottman@rcfp.org

Ian Kalish, Esq.*
UNIVERSITY OF VIRGINIA LAW
SCHOOL FIRST AMENDMENT CLINIC
580 Massie Road
Charlottesville, VA 22903
(202) 795-9316

* *Of counsel*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-2043 Caption: Courthouse News Service et al. v. Jewett et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Reporters Committee for Freedom of the Press, The American Society of Magazine Editors,
(name of party/amicus)

The Associated Press, Association of Alternative Newsmedia, The Baltimore Banner/Venetoulis Institute

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☐ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Gabriel Rottman Date: October 28, 2026

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-2043 Caption: Courthouse News Service et al. v. Jewett et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Center for Investigative Reporting, Inc., First Amendment Coalition, Free Press, The Intercept Media, Inc.,
(name of party/amicus)

International Documentary Association, The Media Institute, National Freedom of Information Coalition

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☐ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Gabriel Rottman Date: October 28, 2026

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-2043 Caption: Courthouse News Service et al. v. Jewett et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

National Newspaper Association, National Press Photographers Association, National Public Radio, Inc.,
(name of party/amicus)

New England First Amendment Coalition, New England Newspaper and Press Association, News/Media A

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☐ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Gabriel Rottman Date: October 28, 2026

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-2043 Caption: Courthouse News Service et al. v. Jewett et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

News Guild - CWA, Online News Association, PEN America Center, Inc., Pro Publica, Inc.,
(name of party/amicus)

Radio Television Digital News Association, Society of Environmental Journalists, Society of Professional J

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☐ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Gabriel Rottman Date: October 28, 2026

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-2043 Caption: Courthouse News Service et al. v. Jewett et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Tully Center for Free Speech/Syracuse University, Virginia Coalition for Open Government,
(name of party/amicus)

Virginia Press Association

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☐ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Gabriel Rottman Date: October 28, 2026

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-2043 Caption: Courthouse News Service et al. v. Jewett et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

The New York Times Company, USA Today Co., Inc.
(name of party/amicus)

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☑ YES ☐ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☐ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Gabriel Rottman Date: October 28, 2026

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-2043 Caption: Courthouse News Service et al. v. Jewett et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

The Atlantic Monthly Group LLC, Bloomberg Industry Group, Inc., Forbes Media LLC
(name of party/amicus)

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
If yes, identify all parent corporations, including all generations of parent corporations:

The Atlantic Monthly Group LLC is owned by Emerson Collective and Atlantic Media, Inc.
Bloomberg Industry Group, Inc. is owned by Bloomberg-BNA Holdings, Inc., which is owned by Bloomberg Inc.
Forbes Media LLC is owned by Forbes Global Media Holdings, Inc.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☐ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Gabriel Rottman Date: October 28, 2026

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-2043 Caption: Courthouse News Service et al. v. Jewett et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

MS NOW Cable, LLC, Newsday LLC, Penguin Random House LLC
(name of party/amicus)

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
If yes, identify all parent corporations, including all generations of parent corporations:

MS NOW Cable, LLC is owned by Versant Media Group, Inc.
Newsday LLC is owned by Tillandsia Media Holdings LLC and The Charles F. Dolan 2014 Children's Trust FBO Patrick F. Dolan
Penguin Random House LLC is owned by Bertelsmann SE & Co. KGaA

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☐ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Gabriel Rottman Date: October 28, 2026

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

IDENTITY AND INTEREST OF AMICI CURIAE ........ ix

SOURCE OF AUTHORITY TO FILE ........ xi

FED. R. APP. P. 29(a)(4)(E) STATEMENT ........ xi

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. Courts have routinely recognized that news media access to court records is vital for public oversight of the judicial branch. ........ 2

II. Virginia's prohibition on sharing electronic court records undermines the press's right to timely publish the news, compounding the significant challenges already faced by journalists reporting on local courts. ........ 7

A. The press has a constitutionally protected right to disseminate the news in a timely manner. ........ 7

B. The dissemination restriction makes it practically impossible for the media to timely report the news given the challenges journalists already face in reporting on local courts. ........ 11

III. Virginia's prohibition on sharing online electronic court records is presumptively unconstitutional because it preemptively forbids communication between attorneys and journalists. ........ 18

CONCLUSION ........ 23

CERTIFICATE OF COMPLIANCE ........ 24

CERTIFICATE OF SERVICE ........ 25

ADDENDUM: STATEMENTS OF INTEREST OF INDIVIDUAL AMICI CURIAE ........ 26

## TABLE OF AUTHORITIES

**Cases**


*Alexander v. United States,*
509 U.S. 544 (1993) ....................18

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963) ....................19

*CBS Inc. v. Young*,
522 F.2d 234 (6th Cir. 1975) ....................20

*City of Lakewood v. Plain Dealer Publ'g Co*.,
486 U.S. 750 (1988) ....................19

*Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*,
203 F.3d 291 (4th Cir. 2000) ....................3

*Courthouse News Serv. v. N.M. Admin. Off. of Cts.*,
53 F.4th 1245 (10th Cir. 2022) ....................10

*Courthouse News Serv. v. Omundson*,
190 F.4th 757 (9th Cir. 2026) ....................9, 10

*Courthouse News Serv. v. Smith*,
126 F.4th 899 (4th Cir. 2025) ....................22

*Courthouse News Serv. v. Schaefer*,
2 F.4th 318 (4th Cir. 2021) ....................9

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975) ....................21

*Davis v. E. Baton Rouge Par. Sch. Bd.*,
78 F.3d 920 (5th Cir. 1996) ....................20

*Doe v. Pub. Citizen*,
749 F.3d 246 (4th Cir. 2014) ....................9

*Globe Newspaper Co. v. Superior Court*,
457 U.S. 596 (1982) ....................2, 3

*Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*,
24 F.3d 893 (7th Cir. 1994),
*superseded on other grounds as recognized by*
*Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009) .................................................9

*Hunt v. City of Los Angeles*,
638 F.3d 703 (9th Cir. 2011) ..........................................................................18

*In re Charlotte Observer*,
921 F.2d 47 (4th Cir. 1990) ............................................................................19

*In re Express-News Corp.*,
695 F.2d 807 (5th Cir. 1982) ..........................................................................16

*Int'l News Serv. v. Associated Press*,
248 U.S. 215 (1918).......................................................................................7, 8

*Mills v. Alabama*,
384 U.S. 214 (1966) ..........................................................................................2

*N.Y. Times Co. v. United States* ("*Pentagon Papers*"),
403 U.S. 713 (1971) ........................................................................................19

*Near v. Minnesota ex rel. Olson*,
283 U.S. 697 (1931) ........................................................................................19

*Neb. Press Ass'n v. Stuart*,
427 U.S. 539 (1976) ...............................................................................8, 9, 19

*Ostergren v. Cuccinelli*,
615 F.3d 263 (4th Cir. 2010) ..........................................................................21

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555 (1980) ........................................................................................16

*Soderberg v. Carrion*,
999 F.3d 962 (4th Cir. 2021) ...................................................................20, 21

*Telco Commc'ns, Inc. v. Carbaugh*,
885 F.2d 1225 (4th Cir. 1989) ........................................................................19

*Va. Dep't of State Police v. Wash. Post*,
386 F.3d 567 (4th Cir. 2004) ............................................................................3

**Statutes**

Ohio Rev. Code Ann. § 2303.12 .......... 14

Va. Code Ann. § 17.1-225 .......... 22

Va. Code Ann. § 17.1-293 .......... *passim*

Va. Code Ann. § 8.01-420.8 .......... 22

**Other Authorities**

Alacourt.com, *Just One Look–Alabama's On-Demand Public Access to Trial Court Records*, https://perma.cc/S7SN-35FH (last visited Oct. 28, 2026) .......... 14

Alacourt.com, *Terms of Use*, https://perma.cc/RT4H-FHMH (last visited Oct. 28, 2026) .......... 15

Allegheny Cnty., *Services*, https://perma.cc/JGG4-UEYT (last visited Oct. 28, 2026) .......... 15

Andrew Chung et al., *Shot by cops, thwarted by judges and geography*, Reuters (Aug. 25, 2020), https://bit.ly/4e5Ed61 .......... 4

Anne Godlasky, *Pacer: How Journalists Mine Records*, Nat'l Press Found. (Mar. 21, 2022), https://perma.cc/RG4M-CL6N .......... 17

Ariz. Jud. Branch, *eAccess*, https://perma.cc/7F32-ZEV6 (last visited Oct. 28, 2026) .......... 14

Ark. Judiciary, *Search ARCourts*, https://perma.cc/7NNV-93EW (last visited Oct. 28, 2026) .......... 14

Brandon Weigel, *Law enforcement officers no longer show up in MD court database, and reporters are rightly mad*, Balt. Fishbowl (Mar. 2, 2018), https://perma.cc/U4DF-TXPZ .......... 16

Cal. R. Ct. 2.503 .......... 15

Chris "Law Dork" Geidner (@ChrisGeidner), X (Aug. 28, 2025, 11:12 AM), https://perma.cc/EK8Z-ZZXF .......... 6

Christina Koningisor & Lyrissa Lidsky, *First Amendment Disequilibrium*, 110 Va. L. Rev. 1 (2024) .......... 12

Christopher Cann, '*Alien terrorist' court used for the first time ever in historic case*, USA Today (July 30, 2026), https://bit.ly/3WaNPGu .......... 6

Conn. Jud. Branch, *Frequently Asked Questions About E-Filing* (Apr. 15, 2025), https://bit.ly/4Bt4Cog .......... 14

Courthouse News Serv., *Report: Access to public records in Virginia courts* (2022), https://perma.cc/PB5G-X7F5 .......... 13, 17

Courtney D. Boehm, *News Deserts and the Courts: How Are Kansas Courts Affected When There Is No Local Media Coverage?*, 94 Kan. B.J. 24 (2025) .......... 11

Davidson Cnty. Circuit Ct. Clerk, *CaseLink Frequently Asked Questions*, https://perma.cc/7R6L-LY58 (last visited Oct. 28, 2026) .......... 15

Ella Lee, *Fed's Lisa Cook sues Trump over 'unprecedented and illegal' firing*, The Hill (Aug. 28, 2025), https://bit.ly/4BuW8wZ .......... 6

Eric Everington & Adam Hamza, *Virginia Prosecuted 46,000+ Marijuana Cases in 2018*, Cap. News Serv. (Dec. 12, 2019), https://perma.cc/T3L8-6GWP .......... 3, 5

Fed. R. Civ. P. 5.2 .......... 22

Fla. Cts. Tech. Comm'n, *Standards for Access to Electronic Court Records* (Sept. 2024), https://perma.cc/ZDS8-H9XQ .......... 15

Fred Fedler et al., Reporting for the Media (8th ed. 2005) .......... 7

Hannah Beckler, *Patrol dogs are terrorizing and mauling prisoners inside the United States*, Bus. Insider (July 23, 2023), https://bit.ly/4is8MEp .......... 5

Haw. State Judiciary, *eCourt Kōkua*,
https://perma.cc/N258-3AMN (last visited Oct. 28, 2026) .................................14

*How Americans describe their news consumption behaviors*,
Am. Press Inst. (June 11, 2018),
https://perma.cc/M3L2-84PB ........................................................................7

Jaeah Lee, *The Courts Beat*, Colum. Journalism Rev. (Feb. 2, 2021),
https://bit.ly/4yIqQAd ...............................................................................13

Janet Kolodzy, Convergence Journalism: Writing and Reporting Across the
News Media (2006) .....................................................................................7

Kan. Jud. Branch, *Public Portal Smart Search* (Sept. 10, 2025),
https://bit.ly/4iMznMD...............................................................................14

Katie O'Connor & Ned Oliver, *From the emergency room to the courtroom: Va. medical providers sued patients for nearly $590 million over past five years*, Va. Mercury (Aug. 8, 2018),
https://perma.cc/G27Y-HL78 ....................................................................3, 5

Kif Leswing, *Apple says it will appeal after court finds company, executive lied under oath in Epic Games trial*, CNBC (Apr. 30, 2025),
https://bit.ly/4zoieQf.................................................................................4, 6

Ltr. from W. Christopher McDonough, Presiding Judge, Mo. 11th Jud. Cir.,
to Local Attorneys (Feb. 17, 2023),
https://bit.ly/4iJyeGu ...............................................................................14

Minn. Jud. Branch, *Minnesota Court Records Online (MCRO)*,
https://perma.cc/V75V-ACRA (last visited Oct. 28, 2026) ................................14

Miss. Elec. Cts., *Terms and Conditions*,
https://perma.cc/V7VX-JMEF (last visited Oct. 28, 2026).................................14

N.C. Jud. Branch, *Portal*,
https://perma.cc/VA4R-BVJB (last visited Oct. 28, 2026).................................14

N.J. Cts., *Notice to the Bar: Public Access to Court Documents Filed in eCourts; Reminder of Attorney Obligation to Redact; Free CLE Training Offered* (Aug. 7, 2018),
https://bit.ly/4iKKh6v ...............................................................................14

N.Y. State Unified Ct. Sys., *Getting Court Records & Case Information*, https://bit.ly/4spZsoR (last visited Oct. 28, 2026) ............................................14

Neb. Jud. Branch, *Case Information–eServices*, https://perma.cc/FN6B-D849 (last visited Oct. 28, 2026) ........................................................................14

Paul Kiel & Annie Waldman, *The Color of Debt: How Collection Suits Squeeze Black Neighborhoods*, ProPublica (Oct. 8, 2015), https://bit.ly/4BBFgou ..........................................................................4

PeachCourt, *Map of Courts We Serve*, https://perma.cc/A5FL-QEM6 (last visited Oct. 28, 2026)................................15

Penelope Muse Abernathy, Univ. N.C., *News Deserts and Ghost Newspapers: Will Local News Survive?* (2020), https://perma.cc/4PSK-3QUY ...........................................................11, 12

Peter Beck & Seamus Hughes, *The Rabbit Hole: Dockets Die in Darkness*, Ct. Watch (Feb. 1, 2026), https://perma.cc/2GHC-GWCP ........................................................12, 16

Press Release, Brennan Ctr. for Just., *Slate and State Court Report Begin Partnership* (Oct. 10, 2024), https://perma.cc/66UL-CA6U ..................................................................11

R.I. Judiciary, *Data Subscription Agreement* (rev. Oct. 1, 2019), https://perma.cc/76WB-ZH87 ..................................................................16

S.C. Jud. Branch, *E-Filing for Attorneys–FAQs*, https://perma.cc/RG8E-U6PS (last visited Oct. 28, 2026).................................15

Ted Gest, *Court Coverage – From "The Front Page" to the Internet*, Gateway Journalism Rev. (Mar. 6, 2025), https://perma.cc/U44E-B9T7.........................................................12, 13

Tex. Jud. Council, *Data Committee Report & Recommendations FY 2024* (2024), https://perma.cc/NH6S-Y48T..................................................................15

The Sydney Hillman Found., *2024 Hillman Prize for Newspaper Journalism*, https://perma.cc/4YHC-5PRD.....................................................................6

Toni Locy, Covering America's Courts: A Clash of Rights (2013) .......................... 8

Utah State Cts., *Xchange: Public Case Search*,
https://perma.cc/8W3C-UZ4L (last visited Oct. 28, 2026) .................................. 15

W. Va. Judiciary, *Information for the Public*,
https://perma.cc/26Z7-DQQ5 (last visited Oct. 28, 2026) ................................... 15

Zach Metzger, Medill Sch. of Journalism Loc. News Initiative, *The State of Local News* (2025),
https://perma.cc/LX5C-UML5 ........................................................ 11, 12

## IDENTITY AND INTEREST OF AMICI CURIAE

Amici are Reporters Committee for Freedom of the Press ("Reporters Committee"); American Society of Magazine Editors; The Associated Press; Association of Alternative Newsmedia; The Atlantic Monthly Group LLC; The Baltimore Banner; Bloomberg Industry Group, Inc.; The Center for Investigative Reporting; First Amendment Coalition; Forbes Media LLC; Free Press; The Intercept Media, Inc.; International Documentary Association; The Media Institute; MS NOW; National Freedom of Information Coalition; National Newspaper Association; National Press Photographers Association; National Public Radio, Inc.; New England First Amendment Coalition; New England Newspaper and Press Association, Inc.; The New York Times Company; News/Media Alliance; Newsday LLC; The NewsGuild – CWA; Online News Association; PEN America; Penguin Random House LLC; Pro Publica, Inc.; Radio Television Digital News Association; Society of Environmental Journalists; Society of Professional Journalists; Tully Center for Free Speech; USA Today Co., Inc.; Virginia Coalition for Open Government; and Virginia Press Association.

Lead amicus Reporters Committee is an unincorporated nonprofit association. Reporters Committee was founded by journalists and media lawyers in 1970, when the nation's press faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources. Today, its attorneys

provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.  Statements of interest of individual amici are included in the addendum to this brief.

As members of the news media and organizations that defend the First Amendment and newsgathering rights of the press, amici have a strong interest in ensuring that the public's presumptive right to inspect judicial records under the First Amendment is not infringed and that unconstitutional restrictions on the dissemination of court records are not imposed.  Amici, some of which are CNS subscribers, write to emphasize the public interest at stake in this case and to underscore the importance of timely access to civil court records for the news media.  That access is essential to allow the press to keep the public informed about court cases in Virginia and nationwide.

## SOURCE OF AUTHORITY TO FILE

Amici have obtained consent to file this brief from all parties and therefore may file it pursuant to Federal Rule of Appellate Procedure 29(a)(2).

## FED. R. APP. P. 29(a)(4)(E) STATEMENT

No party's counsel authored any part of this brief. No person other than amici or their counsel contributed money intended to fund the brief's preparation or submission.

## INTRODUCTION

Ready access by journalists to public court records is imperative to facilitate awareness of legal developments that impact the public at large. In accordance with this public interest, every state opens up its court records to in-person inspection, and many states additionally provide mechanisms for the public, including members of the press, to electronically access these records. But some states, including Virginia, undermine that public interest by restricting the public's access to electronic court records. Virginia confines usage of its electronic docket systems to Virginia-barred attorneys and their staff, attorneys who have obtained pro hac vice admission for specific cases, and certain government agencies; the Commonwealth prohibits these users from disseminating electronically accessed judicial records to the public, including to journalists. *See* Va. Code Ann. § 17.1-293(H). Virginia lawyers must register with each individual court to access relevant electronic judicial records, with most courts using the Officer of the Court Remote Access database ("OCRA") to provide remote access. The OCRA user agreements attorneys must sign reiterate the ban on disseminating any judicial records the attorney accesses via the system. Compl. ¶ 60. While Virginia still allows journalists to access records at the courthouse, and similarly permits attorneys to disseminate records accessed in person to journalists, the practical

effect of Virginia's electronic access regime hinders the flow of newsworthy information and deprives the public of timely access to critical information.

Amici present three arguments. First, the press routinely serves a critical public function by reporting on court developments and disseminating court records. Second, Virginia's electronic records regime impermissibly obstructs journalists from reporting on already-public court documents in a timely manner, magnifying the burdens journalists already face in covering local courts. Third, Virginia's imposition of a restriction on the dissemination of electronic records is an unconstitutional prior restraint on speech.

For these reasons, amici urge the Court to affirm the trial court's denial of Defendants' motion to dismiss.

## ARGUMENT

### I. Courts have routinely recognized that news media access to court records is vital for public oversight of the judicial branch.

The media routinely covers developments in state courts, and this reporting serves a powerful public interest. Court coverage is an essential component of the democratic process, as legal matters are meaningfully connected to issues faced by local communities. It has long been understood that "a major purpose of [the First] Amendment [is] to protect the free discussion of governmental affairs." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604 (1982) (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)). Such discussion cannot occur if the media—

and, in turn, the public—lack access to court documents. It is therefore unsurprising that courts have repeatedly emphasized that the "[p]ublicity of [court] records . . . is necessary . . . so that the public can judge the product of the courts in a given case." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (quoting *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir. 2000)); *see also Globe Newspaper Co.*, 457 U.S. at 604 (explaining that the right of access to court documents "serves to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government").

Recent real-world reporting demonstrates this valuable oversight function, as journalists regularly use court records to illuminate important legal trends in the Commonwealth. *See, e.g.*, Eric Everington & Adam Hamza, *Virginia Prosecuted 46,000+ Marijuana Cases in 2018*, Cap. News Serv. (Dec. 12, 2019), https://perma.cc/T3L8-6GWP (examination of a database of cases processed in General District Courts enabled reporting that Virginia had prosecuted over 46,000 marijuana cases in 2018); Katie O'Connor & Ned Oliver, *From the emergency room to the courtroom: Va. medical providers sued patients for nearly $590 million over past five years*, Va. Mercury (Aug. 8, 2018), https://perma.cc/G27Y-HL78 (breaking down how aggregated online court records revealed that Virginia hospitals were routinely suing their own patients for vast sums of money).

Indeed, journalists regularly rely on judicial records to break news on a wider geographic scale. In 2020, after reviewing 529 federal appellate decisions and 435 federal district court rulings, Reuters concluded that a plaintiff's likelihood of prevailing in a civil rights suit against law enforcement officers depended critically upon the jurisdiction where the claim was filed. Andrew Chung et al., *Shot by cops, thwarted by judges and geography*, Reuters (Aug. 25, 2020), https://bit.ly/4e5Ed61. In 2025, upon reviewing a recently published court filing, CNBC reported that Apple had "willfully violated" an injunction connected to a dispute with Epic Games and that Apple's vice president of finance "'outright lied' to the court about when Apple had decided to levy a 27% fee on some purchases linked to its App Store." Kif Leswing, *Apple says it will appeal after court finds company, executive lied under oath in Epic Games trial*, CNBC (Apr. 30, 2025), https://bit.ly/4zoieQf. And in 2015, a ProPublica investigation into debt collection lawsuits in St. Louis revealed that "debt buyers, banks, hospitals, utilities, and auto and high-cost lenders . . . have seized at least $34 million from residents of St. Louis' mostly black neighborhoods through suits filed between 2008 and 2012." Paul Kiel & Annie Waldman, *The Color of Debt: How Collection Suits Squeeze Black Neighborhoods*, ProPublica (Oct. 8, 2015), https://bit.ly/4BBFgou.

Closer to home, journalists regularly use court records to illuminate important legal trends in the Commonwealth. *See, e.g.*, Everington & Hamza, *supra* (examination of a database of cases processed in General District Courts enabled reporting that Virginia had prosecuted over 46,000 marijuana cases in 2018); O'Connor & Oliver, *supra* (breaking down how aggregated online court records revealed that Virginia hospitals were routinely suing their own patients for vast sums of money).

Indeed, because court records serve as primary sources, they often become key pieces of the reporting, allowing the public to assess and draw their own conclusions. In one particularly powerful example, Business Insider reporter Hannah Beckler's investigative work about the use of dogs in Virginia prisons critically hinged on accessing and reproducing court documents involving the Virginia Board of Corrections. *See* Hannah Beckler, *Patrol dogs are terrorizing and mauling prisoners inside the United States*, Bus. Insider (July 23, 2023), https://bit.ly/4is8MEp. Tracking down public filings made in federal cases allowed her to publish an extensive examination of the treatment of prisoners in Virginia prisons, including a documentary video containing security video footage drawn from judicial records. Her award-winning reporting spurred the enactment of bipartisan legislation by the Virginia House of Delegates to regulate the use of

patrol dogs in state prisons. The Sydney Hillman Found., *2024 Hillman Prize for Newspaper Journalism*, https://perma.cc/4YHC-5PRD.

More generally, including links to court documents is increasingly the norm when reporting on legal issues. *See, e.g.*, Leswing, *supra* (reproducing relevant court order in Apple dispute). This is particularly so in jurisdictions where the press has access to online court records, as a journalist reporting on a newly filed lawsuit may share a copy of the complaint that same day. *See, e.g.*, Chris "Law Dork" Geidner (@ChrisGeidner), X (Aug. 28, 2025, 11:12 AM), https://perma.cc/EK8Z-ZZXF (legal reporter sharing link to Federal Reserve Board Governor Lisa Cook's lawsuit in response to her attempted firing by President Trump). This, in turn, allows reporters to publish timely articles reporting on the relevant lawsuit in greater depth. *See, e.g.*, Ella Lee, *Fed's Lisa Cook sues Trump over 'unprecedented and illegal' firing*, The Hill (Aug. 28, 2025), https://bit.ly/4BuW8wZ; Christopher Cann, '*Alien terrorist' court used for the first time ever in historic case*, USA Today (July 30, 2026), https://bit.ly/3WaNPGu.

## II. Virginia's prohibition on sharing electronic court records undermines the press's right to timely publish the news, compounding the significant challenges already faced by journalists reporting on local courts.

### A. The press has a constitutionally protected right to disseminate the news in a timely manner.

Timeliness is a critical component of news. As one journalism scholar stated succinctly: "It is, after all, called the 'news' business and not the 'olds' business." Janet Kolodzy, Convergence Journalism: Writing and Reporting Across the News Media 59 (2006); *see also* Fred Fedler et al., Reporting for the Media (8th ed. 2005) (describing timeliness as one of the key characteristics of news). In an era of close-to-instantaneous digital communication, the work of producing timely, factual reporting is as important as ever. And the public's appetite for up-to-the-minute news coverage has kept pace with evolving technology. "By a large majority, nearly two-thirds of adults now say they look at news at least several times a day. We are now a nation of serial news consumers." *How Americans describe their news consumption behaviors*, Am. Press Inst. (June 11, 2018), https://perma.cc/M3L2-84PB. Indeed, as the Supreme Court recognized over a century ago, "[t]he peculiar value of news is in the spreading of it while it is fresh." *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 235 (1918). Today, the timeframe for what is considered "fresh" is shorter than ever. The websites of the *Los Angeles Times* and *The New York Times*, for example, measure the timeliness

of news updates in minutes; other news services, such as Dow Jones Newswires, and social media platforms like X and BlueSky, mark new posts by the second. *See* Toni Locy, Covering America's Courts: A Clash of Rights 13 (2013) ("In the Internet age, a deadline passes every second.").

Thus, delaying access by even one day may imperil the news media's ability to provide meaningful reporting on newly filed, newsworthy lawsuits, as the next day's headlines can eclipse yesterday's news. Policies that delay access to judicial records—like Virginia's dissemination restriction—can amount to a complete denial of meaningful access, as "old news" does not receive the same level of public attention as timely news and may not be published at all. In contrast, timely access to civil court records allows the news media to report on them when their newsworthiness is at its apex.

Accordingly, the Supreme Court and federal courts of appeals, including this one, have repeatedly recognized timeliness as a fundamental feature of news. *See, e.g.*, *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 561 (1976) ("As a practical matter . . . the element of time is not unimportant if press coverage is to fulfill its traditional function of bringing news to the public promptly."); *Int'l News Serv.*, 248 U.S. at 235 (recognizing a quasi-property interest in "fresh" news). Given that public access to court records "'improve[s] the quality of [the judicial] system by subjecting it to the cleansing effects of exposure and public accountability,' . . .

[t]he press and public . . . have an important interest in *reasonably contemporaneous access* to civil complaints." *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 327–28 (4th Cir. 2021) (emphasis added) (quoting *Neb. Press Ass'n*, 427 U.S. at 587 (Brennan, J., concurring)). "[T]he public benefits attendant with open proceedings are compromised by delayed disclosure," *Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014), in part, as the Seventh Circuit has explained, because "[t]he newsworthiness of a particular story is often fleeting," and, thus, "[t]o delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression," *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994), *superseded on other grounds as recognized by Bond v. Utreras*, 585 F.3d 1061, 1068 n.4 (7th Cir. 2009); *see also Pub. Citizen*, 749 F.3d at 272 ("[e]ach passing day" of delayed access to court records "may constitute a separate and cognizable infringement of the First Amendment" (citation omitted)). Similarly, the Ninth Circuit has found that delaying access to a complaint even for the short period between its submission and processing by a court would undermine "[t]he core public interest that the First Amendment right of public access protects [in] obtaining contemporaneous news . . . [as] a delay of even a few business hours can result in a denial of meaningful access, both for reporters themselves and for the public which relies on the press for information." *Courthouse News Serv. v. Omundson*, 190

F.4th 757, 766–67 (9th Cir. 2026) (citations and internal quotation marks omitted); *accord Courthouse News Serv. v. N.M. Admin. Off. of Cts.*, 53 F.4th 1245, 1269 (10th Cir. 2022) (recognizing that "[t]imeliness is not only an essential component of the right to access, but it is also an essential component of a journalist's line of work," and that "the need for immediacy of reporting news is even more vital in the digital age, where timeliness is measured in terms of minutes or seconds" (citation omitted)).

By not only prohibiting journalists' direct access to electronic dockets but also barring them from obtaining electronic records from sources who *do* have access, Va. Code Ann. § 17.1-293(H), Virginia's system directly undermines journalists' right to timely report the news. The dissemination restriction means that reporters covering Virginia circuit courts must travel to each individual courthouse to view court records on a public access terminal—and can do so only on days and times when the courthouse is open. More than a mere inconvenience, these burdens significantly hamper the news media's ability to timely report on court cases of interest and importance to the public that are pending throughout the Commonwealth, including in the 112 Virginia circuit courts that utilize OCRA and which cover a distance of over 30,000 square miles. Compl. ¶ 69.

### B. The dissemination restriction makes it practically impossible for the media to timely report the news given the challenges journalists already face in reporting on local courts.

This state-sanctioned logistical hurdle is exacerbated by pre-existing burdens already faced by journalists today. More and more, responsibility for covering legal developments falls squarely on the shoulders of local journalists, as national "[l]egal coverage has an unfortunate tendency to focus on the Supreme Court and the federal judiciary almost to the exclusion of state courts." Press Release, Brennan Ctr. for Just., *Slate and State Court Report Begin Partnership* (Oct. 10, 2024), https://perma.cc/66UL-CA6U. But the general erosion of local journalism has hindered this important work. According to a 2025 report by Northwestern University's Medill School of Journalism, "[a]lmost 40% of all local U.S. newspapers have vanished, leaving 50 million Americans with limited or no access to a reliable source of local news." Zach Metzger, Medill Sch. of Journalism Loc. News Initiative, *The State of Local News* 8 (2025), https://perma.cc/LX5C-UML5. The shuttering of almost 3,500 newspapers has left one in every four Americans "with limited access to a local print newspaper," *id*. at 9, generating so-called "news deserts" around the country, *see* Courtney D. Boehm, *News Deserts and the Courts: How Are Kansas Courts Affected When There Is No Local Media Coverage?*, 94 Kan. B.J. 24, 25 (2025), including in Virginia, Penelope Muse Abernathy, Univ. N.C., *News Deserts and Ghost Newspapers: Will Local News*

*Survive?* 20 (2020), https://perma.cc/4PSK-3QUY (at least a half-dozen counties in Virginia have no local newspaper). And even surviving local newspapers have been impacted—since 2005, the newspaper industry has lost more than three-quarters of its jobs. Metzger, *supra*, at 10; *see also* Christina Koningisor & Lyrissa Lidsky, *First Amendment Disequilibrium*, 110 Va. L. Rev. 1, 30–31 (2024) (describing the increasingly prevalent phenomena of news deserts and of "ghost newspapers," which are "formerly vibrant print publications that now operate with an extremely limited staff and a rapidly declining circulation").

News deserts have resulted in "dozens of . . . court districts around the country that lack well-resourced newsrooms and dedicated legal reporters." Peter Beck & Seamus Hughes, *The Rabbit Hole: Dockets Die in Darkness*, Ct. Watch (Feb. 1, 2026), https://perma.cc/2GHC-GWCP. These cutbacks mean that legal stories are often reported on by general staff reporters rather than specialized legal reporters. Ted Gest, *Court Coverage – From "The Front Page" to the Internet*, Gateway Journalism Rev. (Mar. 6, 2025), https://perma.cc/U44E-B9T7. But local reporters temporarily drafted to the legal beat often lack both the "contacts that court focused journalists used to have" as well as the "time [and] interest in really getting into a particular issue." *Id*. And because "large newspapers continu[e] their extensive coverage" while "small-town media closely track[] local cases," a decline in reporting has been most particularly felt in "'medium-sized' areas." *Id*.

Resource constraints often leave journalists over-extended and tasked to cover vast swathes of territory. For example, Nate Gartrell, a legal reporter for the *East Bay Times*, was responsible for covering Contra Costa County, which numbers over a million people and spans nineteen cities. Jaeah Lee, *The Courts Beat*, Colum. Journalism Rev. (Feb. 2, 2021), https://bit.ly/4yIqQAd. His paper then additionally assigned him Alameda County, encompassing fourteen cities including Berkeley and Oakland, "more than doubl[ing his] workload." *Id*. Gartrell's situation is no outlier; Plaintiff-Appellee Courthouse News Service explained the difficulty its reporters experienced in visiting twenty-five Virginia circuit courts across more than 1,000 miles over the course of five days of continuous travel. Courthouse News Serv., *Report: Access to public records in Virginia courts* (2022), https://perma.cc/PB5G-X7F5.

Faced with shrinking resources and expanding responsibilities, journalists must increasingly rely on online electronic court records. But Virginia prohibits journalists from doing so, and even prohibits them from obtaining online electronic records from attorneys who have access to OCRA. Indeed, Virginia's approach to electronic access is particularly restrictive and out of step with national trends. Many states allow journalists direct and instantaneous digital access to court records to facilitate immediate and meaningful reporting, including Alabama, Arizona, Arkansas, Connecticut, Hawaii, Kansas, Minnesota, Mississippi,

Missouri, Nebraska, New Jersey, New York, North Carolina, Ohio, South Carolina, Texas, Utah, and West Virginia.[1] And others, including California,

---

[1] Alacourt.com, *Just One Look–Alabama's On-Demand Public Access to Trial Court Records*, https://perma.cc/S7SN-35FH (last visited Oct. 28, 2026) (public portal for online court documents in Alabama); Ariz. Jud. Branch, *eAccess*, https://perma.cc/7F32-ZEV6 (last visited Oct. 28, 2026) (public portal for online court documents in Arizona); Ark. Judiciary, *Search ARCourts*, https://perma.cc/7NNV-93EW (last visited Oct. 28, 2026) (public portal for online court documents in Arkansas); Conn. Jud. Branch, *Frequently Asked Questions About E-Filing*, at 13–14, questions 33–35 (Apr. 15, 2025), https://bit.ly/4Bt4Cog (FAQ board clarifying public access to online court documents in Connecticut); Haw. State Judiciary, *eCourt Kōkua*, https://perma.cc/N258-3AMN (last visited Oct. 28, 2026) (public portal for online court documents in Hawaii); Kan. Jud. Branch, *Public Portal Smart Search* (Sept. 10, 2025), https://bit.ly/4iMznMD (guide detailing how to access electronic court records in Kansas); Minn. Jud. Branch, *Minnesota Court Records Online (MCRO)*, https://perma.cc/V75V-ACRA (last visited Oct. 28, 2026) (public portal for online court documents in Minnesota); Miss. Elec. Cts., *Terms and Conditions* ¶¶ 1–6, https://perma.cc/V7VX-JMEF (last visited Oct. 28, 2026) (terms and conditions for general public access to online court documents in Mississippi); Ltr. from W. Christopher McDonough, Presiding Judge, Mo. 11th Jud. Cir., to Local Attorneys (Feb. 17, 2023), https://bit.ly/4iJyeGu (letter clarifying public remote access to court documents in Missouri); Neb. Jud. Branch, *Case Information–eServices*, https://perma.cc/FN6B-D849 (last visited Oct. 28, 2026) (public portal for online court documents in Nebraska); N.J. Cts., *Notice to the Bar: Public Access to Court Documents Filed in eCourts; Reminder of Attorney Obligation to Redact; Free CLE Training Offered* (Aug. 7, 2018), https://bit.ly/4iKKh6v (letter announcing opening up of New Jersey electronic docket access to members of the public); N.Y. State Unified Ct. Sys., *Getting Court Records & Case Information*, https://bit.ly/4spZsoR (last visited Oct. 28, 2026) (guide explaining how the public can access online court records in New York); N.C. Jud. Branch, *Portal*, https://perma.cc/VA4R-BVJB (last visited Oct. 28, 2026) (public portal for online court documents in North Carolina); Ohio Rev. Code Ann. § 2303.12(D)–(E) (effective Sept. 30, 2025) (Ohio statute mandating general remote public access for court documents); S.C. Jud. Branch, *E-Filing for Attorneys*–FAQs, https://perma.cc/RG8E-U6PS (last visited Oct. 28, 2026) (FAQ board clarifying general public access to documents in South Carolina Common Pleas courts); Tex.

Florida, Georgia, Pennsylvania, and Tennessee, offer at least some digital access at local or regional levels.[2] To amici's knowledge, Alabama and Rhode Island are among the only other states to enforce broad restrictions on the dissemination of public content obtained from court records, with Alabama including specific language to target commercial use and database scraping.[3]

---

Jud. Council, *Data Committee Report & Recommendations FY 2024* 6–7 (2024), https://perma.cc/NH6S-Y48T (report clarifying Texas's remote public access requirement for court documents); Utah State Cts., *Xchange: Public Case Search*, https://perma.cc/8W3C-UZ4L (last visited Oct. 28, 2026) (public portal for online court documents in Utah); W. Va. Judiciary, *Information for the Public*, https://perma.cc/26Z7-DQQ5 (last visited Oct. 28, 2026) (West Virginia guide clarifying general public access to online court documents).

[2] Cal. R. Ct. 2.503(a)–(c), (f)–(h) (California rule clarifying some remote public access to court documents, with exceptions considered by category); Fla. Cts. Tech. Comm'n, *Standards for Access to Electronic Court Records* 1–2 (Sept. 2024), https://perma.cc/ZDS8-H9XQ (Florida standards offering some remote public access to court documents depending on the role of the user in the case, but including some access for general public); PeachCourt, *Map of Courts We Serve*, https://perma.cc/A5FL-QEM6 (last visited Oct. 28, 2026) (Georgia public portal allowing remote access to court documents of participating jurisdictions); Allegheny Cnty., *Services*, https://perma.cc/JGG4-UEYT (last visited Oct. 28, 2026) (Pennsylvania county portal offering general remote public access to local court documents); Davidson Cnty. Circuit Ct. Clerk, *CaseLink Frequently Asked Questions*, https://perma.cc/7R6L-LY58 (last visited Oct. 28, 2026) (Tennessee county portal offering general remote public access to court documents via subscription).

[3] Alacourt.com, *Terms of Use* ¶ 13, https://perma.cc/RT4H-FHMH (last visited Oct. 28, 2026) (terms of service for Alabama public access portal clarifying prohibited dissemination of accessed materials for commercial gain); R.I. Judiciary, *Data Subscription Agreement* §§ 4–5 (rev. Oct. 1, 2019), https://perma.cc/76WB-ZH87 (Rhode Island subscription agreement clarifying that

Virginia's dissemination restriction thus inhibits newsgathering, posing significant constitutional concerns. The First Amendment protection for expression is meaningless without the corollary right to gather information. *In re Express-News Corp*., 695 F.2d 807, 808 (5th Cir. 1982) ("[F]reedom to speak is of little value if there is nothing to say."). By making it much more difficult for the media to timely report on civil court cases of public concern, Virginia's regime forces "[t]he crucial prophylactic aspects of the administration of justice" to "function in the dark," as important stories may never come to light due to logistical burdens. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 571 (1980). In turn, "[w]hen reporters aren't around to watch what goes on in . . . courts, local communities are impacted." Beck & Hughes, *supra*; *see also* Brandon Weigel, *Law enforcement officers no longer show up in MD court database, and reporters are rightly mad*, Balt. Fishbowl (Mar. 2, 2018), https://perma.cc/U4DF-TXPZ (quoting the Maryland chapter of the Society of Professional Journalists as saying that the removal of online information "seriously inhibits journalists' abilities to report on law enforcement" and "makes it significantly more difficult for [journalists] to report on" criminal matters).

---

subscribers can only disseminate information if necessary to carry out their legal duties).

Plaintiffs-Appellees' pleadings demonstrate the tangible newsgathering harms that Virginia's restrictions have already had on journalists. Compl. ¶¶ 76–77 (describing how *Richmond Times-Dispatch* reporter Luca Powell was unable to arrive at a courthouse before it closed for the weekend); Compl. ¶ 78 (relaying how the same reporter knew he would be unable to drive to a courthouse 50 miles from his newsroom before it closed); Compl. ¶ 80 (describing how a reporter learned of a Henrico County hospital's wrongful death settlements with the families of nine infants only by being "lucky enough to stumble" across them in a remote court, after the hospital sought to "bury" the news). Absent Virginia's dissemination restriction, journalists would be able to actively monitor dockets across the state and monitor those dockets more closely and more quickly. *See, e.g.*, Courthouse News Serv., *Report: Access to public records in Virginia courts*, *supra* (explaining that clerks at multiple Virginia circuit courts wanted to provide journalists with court records but could not do so because of OCRA restrictions); Anne Godlasky, *Pacer: How Journalists Mine Records*, Nat'l Press Found. (Mar. 21, 2022), https://perma.cc/RG4M-CL6N (guide detailing how the PACER system for accessing federal dockets "is an invaluable tool for journalists," including suggesting how journalists can monitor or search for relevant dockets nationwide).

In short, the dissemination restriction impermissibly hinders the press and harms the public through the suppression of timely reporting on public court

proceedings. Virginia's combined access and dissemination restrictions force overstretched local journalists into a Hobson's choice: promptly arrive at far-flung courthouses across Virginia or let stories wither on the vine.

### III. Virginia's prohibition on sharing online electronic court records is presumptively unconstitutional because it preemptively forbids communication between attorneys and journalists.

In addition to generally inhibiting newsgathering, the dissemination restriction operates as a presumptively unconstitutional prior restraint on speech that silences communication between lawyers and members of the press without sufficient justification.

Virginia's law regarding online docket access does not permit "any data accessed by secure remote access to be sold or posted on any other website or in any way redistributed to any third party." Va. Code Ann. § 17.1-293(H). This provision clearly constitutes a prior restraint, as it operates as an administrative order "forbidding certain communications [that is] issued in advance of the time that such communications are to occur." *Alexander v. United States,* 509 U.S. 544, 550 (1993) (citation omitted). Further, the "unbridled discretion" Virginia has imparted to clerks of court is a hallmark of a prior restraint. *Hunt v. City of Los Angeles*, 638 F.3d 703, 718 (9th Cir. 2011) (citation omitted). Court clerks are authorized to terminate a subscriber's access to stop redistribution, and any remote access to data in the system can be denied to "ensure compliance" with the

provisions. Va. Code Ann. § 17.1-293(H). As the statute provides no standard to guide a clerk's decision and no procedure to review it, the provision "constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publ'g Co*., 486 U.S. 750, 757 (1988) (finding that a licensing ordinance impermissibly placed "unbridled discretion in the hands of a government official or agency").

"[I]t is the chief purpose of the guaranty [of the First Amendment] to prevent previous restraints upon publication." *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 713 (1931). Prior restraints are considered "the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n*, 427 U.S. at 559. This is because it is "by definition . . . an immediate and irreversible sanction," not only "'chill[ing]' speech" but "'freez[ing]' it at least for the time." *Id.*; *accord Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1233 (4th Cir. 1989). There is a heavy presumption against the constitutional validity of prior restraints, which are subject to the most exacting scrutiny. *See N.Y. Times Co. v. United States* ("*Pentagon Papers*"), 403 U.S. 713, 714 (1971) (per curiam); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

The harms of such a restraint are particularly potent when applied to journalists, as the press is in the business of disseminating information. *See In re Charlotte Observer*, 921 F.2d 47, 49 (4th Cir. 1990) (holding that even an order

enjoining reporters from publishing a name revealed in open court is a classic unconstitutional prior restraint). By stemming the flow of newsworthy information to journalists, the dissemination restriction behaves similarly to a gag order imposed on a journalistic source. *See, e.g.*, *CBS Inc. v. Young*, 522 F.2d 234, 239 (6th Cir. 1975) ("Although the news media are not directly enjoined from discussing the case, it is apparent that significant and meaningful sources of information concerning the case are effectively removed from them and their representatives. To that extent their protected right to obtain information concerning the trial is curtailed and impaired."); *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 927 (5th Cir. 1996) (finding that gag orders preventing disclosure of information to the media "impede[] the news agencies' ability to discover newsworthy information from potential speakers," which hinders their protected "abilities to gather the news and to receive protected speech").

Even when assessed as subsequent punishment rather than prior restraint, the Commonwealth's restriction is unconstitutional. In *Soderberg v. Carrion*, this Court invalidated Maryland's ban on broadcasting official recordings of criminal proceedings for this reason. 999 F.3d 962 (4th Cir. 2021). Rather than operating as a "time, place, and manner" restriction on speech, Maryland's rule was "properly assessed as a penal sanction for publishing information released to the public in official court records, [and it was instead] subject to strict scrutiny." *Id.*

at 964–65. Virginia's online access regime operates the same way—it impermissibly punishes lawyers for distributing legally obtained and truthful public records. Compl. ¶ 61; *see Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975) ("[T]he First and Fourteenth Amendments command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection.").

The fact that attorneys remain able to share court records acquired in person at a courthouse does not alter the unconstitutionality of Virginia's speech restriction. This Court has repeatedly invalidated restrictions on the distribution of public information after it is accessed. *See Soderberg*, 999 F.3d at 969 (explaining that "official court recordings of state criminal proceedings constitute truthful information that was released to the public in official court records" and therefore their distribution "cannot constitutionally be punished absent a need to further a state interest of the highest order" (citations and internal quotation marks omitted)); *Ostergren v. Cuccinelli*, 615 F.3d 263, 286 (4th Cir. 2010) (holding that the republication of social security numbers contained in online public records was protected speech, as "those same records [were] available through secure remote access"). The existence of a more burdensome means to acquire and share a record does not change the fact that Virginia has made truthful electronic records accessed online available to attorneys but seeks to foreclose their subsequent distribution.

The state interest furthered by the dissemination provision, namely protection against the release of "unredacted sensitive PII," Mem. of Law in Supp. of Def. Karl R. Hade's Rule 12(b)(1) and Rule 12(b)(6) Mot. to Dismiss at 10, 13, (ECF No. 40), is simply not sufficient, and the sweeping restriction on speech is not narrowly tailored. By statute, OCRA contains only "nonconfidential court records," Va. Code Ann. § 17.1-293(E)(7); *see id.* § 17.1-225, and these records must already be redacted of sensitive social security and financial account numbers, *id.* § 8.01-420.8(A). Indeed, any member of the public is free to obtain the same information at a courthouse. There are more limited means of protecting sensitive information without unduly burdening the press, such as requiring redaction of additional categories of information, as the federal courts do. *See* Fed. R. Civ. P. 5.2.

In *Courthouse News Service v. Smith*, this Court did not reach the merits of CNS's constitutional challenge to the dissemination restriction, but one dissenting judge properly assessed the dissemination restriction as a prior restraint. *See* 126 F.4th 899, 925–26 (4th Cir. 2025) (Gregory, J., dissenting). With CNS's standing issue resolved, this Court should recognize that the dissemination restriction is unconstitutional as a "classic form of prior restraint." *Id.*

## CONCLUSION

For the foregoing reasons, amici respectfully urge the Court to affirm the Western District of Virginia's denial of Defendants' motion to dismiss and remand this case to the Western District of Virginia for continued evaluation of the merits consistent with this Court's opinion.

Dated: October 28, 2026


*/s/ Gabriel Rottman*
Gabriel Rottman, Esq.
*Counsel of Record for Amici Curiae*
Lisa Zycherman, Esq.
Marietta Catsambas, Esq.*
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300
grottman@rcfp.org

Ian Kalish, Esq.*
UNIVERSITY OF VIRGINIA LAW SCHOOL FIRST AMENDMENT CLINIC
580 Massie Road
Charlottesville, VA 22903
(202) 795-9316


* *Of counsel*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7) because it contains 5,638 words, excluding the portions exempted by Fed. R. App. P. 32(f). The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: October 28, 2026

*/s/ Gabriel Rottman*
Gabriel Rottman, Esq.
*Counsel of Record*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2026, I caused the foregoing Brief of Amici Curiae to be electronically filed with the Clerk of the Court using the appellate CM/ECF system, which will automatically send notice of such filing to all counsel of record.

Dated: October 28, 2026

*/s/ Gabriel Rottman*
Gabriel Rottman, Esq.
*Counsel of Record*

## ADDENDUM: STATEMENTS OF INTEREST OF INDIVIDUAL AMICI CURIAE

The American Society of Magazine Editors is the principal organization for the editorial and creative leaders of magazines and websites published in the United States. Founded in 1963, ASME strives to defend the First Amendment, support the development of journalism and promote the editorial integrity of print and digital publications. ASME sponsors the National Magazine Awards in association with the Columbia Journalism School, conducts training programs for reporters and editors and publishes the ASME Guidelines for Editors and Publishers, which articulate basic principles for the conduct of magazine journalists.

The Associated Press ("AP") is a news cooperative organized under the Not-for-Profit Corporation Law of New York. The AP's members and subscribers include the nation's newspapers, magazines, broadcasters, cable news services and Internet content providers. The AP operates from 280 locations in more than 100 countries. On any given day, AP's content can reach more than half of the world's population.

Association of Alternative Newsmedia ("AAN") is a not-for-profit trade association which represents over 100 alternative and independent news organizations across North America. There are a wide range of publications in AAN, but all share an intense focus on local news, culture and the arts; an

emphasis on point-of-view reporting and narrative journalism; a tolerance for individual freedoms and social differences; and an eagerness to report on issues and communities that many mainstream media outlets ignore. AAN members speak truth to power.

The Atlantic Monthly Group LLC is the publisher of *The Atlantic* and TheAtlantic.com. Founded in 1857 by Oliver Wendell Holmes, Ralph Waldo Emerson, Henry Wadsworth Longfellow and others, *The Atlantic* continues its 160-year tradition of publishing award-winning journalism that challenges assumptions and pursues truth, covering national and international affairs, politics and public policy, business, culture, technology and related areas.

The Baltimore Banner is a nonprofit news organization serving communities across Maryland. It is the largest newsroom in Maryland and won the 2025 Pulitzer Prize for Local Reporting.

Bloomberg Industry Group, Inc. empowers government, tax and accounting, law and regulatory professionals with expertise, industry knowledge, content, and technology, enabling them to take decisive action and make the most of every opportunity. Its flagship platforms include Bloomberg Law, Bloomberg Tax, Bloomberg Government and Bloomberg Regology.

The Center for Investigative Reporting, Inc. is the nation's oldest nonprofit investigative newsroom in the country that runs the brands Mother Jones, Reveal,

and CIR Studios. Mother Jones is a reader-supported news magazine and website known for ground-breaking investigative and in-depth journalism on issues of national and global significance. Reveal produces investigative journalism for the Reveal national public radio show and podcast, and CIR Studios produces feature length documentaries distributed on Netflix, Hulu, and other streaming channels. Reveal often works in collaboration with other newsrooms across the country.

First Amendment Coalition (FAC) is a nonprofit public interest organization dedicated to defending free speech, free press and open government rights in order to make government, at all levels, more accountable to the people. The Coalition's mission assumes that government transparency and an informed electorate are essential to a self-governing democracy. FAC advances this purpose by working to improve governmental compliance with state and federal open government laws. FAC's activities include free legal consultations on access to public records and First Amendment issues, educational programs, legislative oversight of California bills affecting access to government records and free speech, and public advocacy, including extensive litigation and appellate work.

Forbes Media LLC is the publisher of Forbes Magazine as well as an array of investment newsletters and the leading business news website, Forbes.com. Forbes has been covering American and global business since 1917.

Free Press is a national, nonpartisan, non-profit organization with approximately 1.5 million members in the United States and around the world. Since its founding in 2003, Free Press has sought to advance the media and transform democracy in furtherance of a just society. Free Press advocates for equitable access to open channels of communication, the right of journalists and others to gather and report on information as well as the public's right to see, hear and read that information—all of which are crucial to a functioning democracy. Free Press has participated in numerous court and agency proceedings on media, telecommunications, and technology law topics, including those involving First Amendment issues.

The Intercept Media, Inc. is a non-profit digital media venture committed to rigorous, adversarial journalism in the public interest.

The International Documentary Association (IDA) is a nonprofit membership organization that supports documentary makers worldwide by providing access to knowledge and connections while advocating for changes that uphold their needs, rights and interests. IDA supports the vital work of documentary makers and champions a thriving and inclusive documentary culture.

The Media Institute is a nonprofit foundation specializing in communications policy issues founded in 1979. The Media Institute exists to foster three goals: freedom of speech, a competitive media and communications

industry, and excellence in journalism. Its program agenda encompasses all sectors of the media, from print and broadcast outlets to cable, satellite, and online services.

MS NOW, previously MSNBC, is a multiplatform news organization that reaches millions across television, online, and through social media. MS NOW's mission is to serve as a trusted destination for domestic and international breaking news and best-in-class opinion journalism.

The National Freedom of Information Coalition is a national nonprofit, nonpartisan organization of state and regional affiliates representing 45 states and the District of Columbia. Through its programs and services and national member network, NFOIC promotes press freedom, litigation and legislative and administrative reforms that ensure open, transparent, and accessible state and local governments and public institutions.

National Newspaper Association is a 2,000-member organization of community newspapers founded in 1885. Its members include weekly and small daily newspapers across the United States. It is based in Pensacola, FL.

The National Press Photographers Association ("NPPA") is a 501(c)(6) non-profit organization dedicated to the advancement of visual journalism in its creation, editing, and distribution. NPPA's members include television and still photographers, editors, students, and representatives of businesses that serve the

visual journalism industry. Since its founding in 1946, NPPA has served as the Voice of Visual Journalists, vigorously promoting the constitutional rights of journalists and freedom of the press in all its forms, especially as it relates to visual journalism. The submission of this brief was duly authorized by Mickey H. Osterreicher, its General Counsel.

National Public Radio, Inc. (NPR) is a non-profit multimedia organization and the leading provider of non-commercial news, information, and entertainment programming to the American public. NPR's fact-based, independent journalism helps the public stay on top of breaking news, follow the most critical stories of the day, and track complex issues over the long term. NPR reaches approximately 41 million people each week on broadcast radio, podcasts, NPR apps, NPR.org, and YouTube video content. NPR distributes its radio broadcasts through more than 1,000 non-commercial, independently operated radio stations, licensed to more than 241 NPR members and numerous other NPR-affiliated entities.

New England First Amendment Coalition is a non-profit organization working in the six New England states to defend, promote and expand public access to government and the work it does. The coalition is a broad-based organization of people who believe in the power of transparency in a democratic society. Its members include lawyers, journalists, historians and academicians, as well as private citizens and organizations whose core beliefs include the principles

of the First Amendment. The coalition aspires to advance and protect the five freedoms of the First Amendment, and the principle of the public's right to know in our region. In collaboration with other like-minded advocacy organizations, NEFAC also seeks to advance understanding of the First Amendment across the nation and freedom of speech and press issues around the world.

New England Newspaper and Press Association, Inc. ("NENPA") is the regional association for newspapers in the six New England States (including Massachusetts). NENPA's corporate office is in Dedham, Massachusetts. Its purpose is to promote the common interests of newspapers published in New England. Consistent with its purposes, NENPA is committed to preserving and ensuring the open and free publication of news and events in an open society.

The New York Times Company is the publisher of *The New York Times* and operates the news website nytimes.com.

News/Media Alliance represents the newspaper, magazine, and digital media industries, including over 2000 news and magazine publishers in the United States and internationally. It is a nonprofit, non-stock corporation organized under the laws of the commonwealth of Virginia. It has no parent company.

Newsday LLC ("Newsday") is the publisher of the daily newspaper, Newsday, and related news websites. Newsday is one of the nation's largest daily newspapers, serving Long Island through its portfolio of print and digital products.

Newsday has received 19 Pulitzer Prizes and other esteemed awards for outstanding journalism.

The News Guild – CWA is a labor organization representing more than 25,000 employees of newspapers, newsmagazines, news services and other media enterprises. Guild representation comprises, in the main, the editorial and online departments of these media outlets. The News Guild is a sector of the Communications Workers of America. CWA is America's largest communications and media union, representing over 500,000 men and women in both private and public sectors.

The Online News Association is the world's largest association of digital journalists. ONA's mission is to inspire innovation and excellence among journalists to better serve the public. Membership includes journalists, technologists, executives, academics and students who produce news for and support digital delivery systems. ONA also hosts the annual Online News Association conference and administers the Online Journalism Awards.

PEN American Center, Inc. ("PEN America") is a nonpartisan nonprofit organization working at the intersection of literature and human rights. Founded in 1922, PEN America advocates for free expression and the interests of writers and journalists in the United States and abroad. Its membership includes more than 5,000 writers, journalists, literary professionals, and readers nationwide. PEN

America protects press freedom and journalists by combatting disinformation, defending journalists against online abuse, and supporting local news.

Penguin Random House LLC publishes adult and children's fiction and nonfiction in print and digital trade book form in the U.S. The Penguin Random House global family of companies employ more than 10,000 people across almost 250 editorially and creatively independent imprints and publishing houses that collectively publish more than 15,000 new titles annually. Its publishing lists include more than 60 Nobel Prize laureates and hundreds of the world's most widely read authors, among whom are many investigative journalists covering domestic politics, the justice system, business and international affairs.

Pro Publica, Inc. ("ProPublica") is an independent, nonprofit newsroom that produces investigative journalism in the public interest. It has won six Pulitzer Prizes, most recently a 2020 prize for national reporting, the 2019 prize for feature writing, and the 2017 gold medal for public service. ProPublica is supported almost entirely by philanthropy and offers its articles for republication, both through its website, propublica.org, and directly to leading news organizations selected for maximum impact. ProPublica has extensive regional and local operations, including ProPublica Illinois, which began publishing in late 2017 and was honored (along with the Chicago Tribune) as a finalist for the 2018 Pulitzer

Prize for Local Reporting, an initiative with the Texas Tribune, which launched in March 2020, and a series of Local Reporting Network partnerships.

Radio Television Digital News Association ("RTDNA") is the world's largest and only professional organization devoted exclusively to electronic journalism. RTDNA is made up of news directors, news associates, educators and students in radio, television, cable and electronic media in more than 30 countries. RTDNA is committed to encouraging excellence in the electronic journalism industry and upholding First Amendment freedoms.

The Society of Environmental Journalists is the only North American membership association of professional journalists dedicated to more and better coverage of environment-related issues.

Society of Professional Journalists ("SPJ") is dedicated to improving and protecting journalism. It is the nation's largest and most broad-based journalism organization, dedicated to encouraging the free practice of journalism and stimulating high standards of ethical behavior. Founded in 1909 as Sigma Delta Chi, SPJ promotes the free flow of information vital to a well-informed citizenry, works to inspire and educate the next generation of journalists and protects First Amendment guarantees of freedom of speech and press.

The Tully Center for Free Speech began in Fall, 2006, at Syracuse University's S.I. Newhouse School of Public Communications, one of the nation's premier schools of mass communications.

USA Today Co. (formerly Gannett) is the largest local newspaper company in the United States. Our 200 local daily brands in 46 states — together with the iconic USA TODAY — reach an estimated digital audience of 180 million each month. In Virginia, USA Today Co. publishes The Progress-Index in Petersburg and The News Leader in Staunton.

Founded in 1996, the Virginia Coalition for Open Government ("VCOG") is a non-partisan organization dedicated to making access to records and meetings of Virginia state and local government as open and accessible as possible. VCOG has more than 150 individual and institutional dues-paying members with membership open to anyone.

The mission of the Virginia Press Association is to support our membership through responsive services and resources. We champion the common interests of Virginia newspapers and the ideals of a free press in a democratic society. Since 1881, the Virginia Press Association has been an unwavering advocate for newspapers in the Commonwealth.